**OIL CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION LOCAL NO. 4–23, et al., Plaintiffs-Appellants,**

v.

**AMERICAN PETROFINA COMPANY OF TEXAS, Defendant-Appellee.**

No. 84–2322.

United States Court of Appeals, Fifth Circuit.

May 6, 1985.

Provost, Umphrey, McPherson & Swearingen, M. Diane Dwight, Port Arthur, Tex., for plaintiffs-appellants.

Goins, Underkofler, Crawford & Langdon, Durwood D. Crawford, Steve Kardell, Jr., Dallas, Tex., for defendant-appellee.

Before WISDOM, WILLIAMS and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants Oil, Chemical and Atomic Workers International Union Local No. 4–23, and Leo Max Hildabridle, Jr. contend that appellee American Petrofina Company of Texas must submit to arbitration their dispute over the propriety of Petrofina's discharging an economic striker because of alleged improper conduct on the picket line. Petrofina counters that it has no obligation to undertake arbitration because its collective bargaining agreement with the Union expired before it fired the worker and because the new agreement does not apply retroactively. After a bench trial, the district court rendered judgment for Petrofina, 586 F.Supp. 643. Because we conclude that the new agreement requires arbitration of the discharge grievance, we reverse

and remand the case with directions to order arbitration.

## I.

The Union's collective bargaining agreement with Petrofina expired on January 8, 1982, and the Union promptly initiated an economic strike at the company's Port Arthur, Texas, refinery. Union members manned picket lines at the gates. Workers refused to cross the picket lines, but Petrofina management continued to work at the plant. Rancor flared up occasionally. Petrofina posted security guards.

The incident that generated the dispute at issue in this case occurred on February 20, 1982, along one of the picket lines. Union member Hildabridle allegedly brandished a knife at security guards, who soon summoned local police. Hildabridle allegedly repeated the assault after the police departed. Local authorities later charged him with a misdemeanor, but a jury found him not guilty. No other tribunal, including the National Labor Relations Board, has adjudicated the lawfulness of Hildabridle's conduct on the picket line or the justification of the company in discharging him.

Petrofina informed Hildabridle of his termination by letter of May 27, 1982. The Union demanded arbitration of the discharge pursuant to the expired collective bargaining agreement, which prohibited firings "without just cause" and mandated arbitration of disputes over discharges, but Petrofina refused.

The strike lasted some eleven months, ending on December 20, 1982, when workers returned to their jobs. On that date, the Union and Petrofina signed a back-to-work agreement and tentatively approved a new collective bargaining contract. The latter document contained grievance and arbitration provisions identical to those in the expired agreement, and it, too, barred discharges without just cause. It said nothing of the Hildabridle dispute. The back-to-work agreement, however, record-

ed the disagreement over the arbitrability of Hildabridle's termination: "The Union's position is that such action is subject to the grievance and arbitration provisions and the Company's position is that it is not." The Union again filed a grievance ending in a demand for arbitration, this time pursuant to the new contract. The company again refused, and this suit resulted. The Union alleged that Petrofina's discharge of Hildabridle without just cause and its refusal to submit the grievance to arbitration violated the new collective bargaining agreement and thus constituted a violation of section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1982), which authorizes suits to redress such contractual breaches.

The district court held a bench trial. Observing that any obligation to arbitrate a dispute must arise from a contractual undertaking,[1] the court held that the arbitration clauses in both the old and the new collective bargaining agreements did not apply to the controversy over Hildabridle's discharge. The former contract had ended, and the new one had not taken effect when Hildabridle lost his job. The court accordingly refused to order arbitration and dismissed the Union's claim. The Union appeals.

## II.

Established principles make resolution of this case straightforward. As a general rule, "an employer may not discharge an economic striker." *International Union of Electrical, Radio and Machine Workers v. Ingram Mfg. Co.*, 715 F.2d 886, 890 (5th Cir.1983) (citing *NLRB v. International Van Lines*, 409 U.S. 48, 52, 93 S.Ct. 74, 77, 34 L.Ed.2d 201 (1972)), *cert. denied,* —— U.S. ——, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984). To the extent that federal labor law protects his employment, therefore, the striker remains an "employ-

---

1. *See, e.g., United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

ee" until the strike ends. *See NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 256, 59 S.Ct. 490, 496, 83 L.Ed. 627 (1939) (citing 29 U.S.C. § 152(3)).[2] It follows that until there is an adjudication of a company's right to fire an economic striker he remains an employee. Thus, Hildabridle was legally still in the status of an employee when the strike ended and the new contract went into effect. The failure of the company to treat him as an employee under the new contract raised the issue of the propriety of his discharge under that agreement.

▮ What is critical to the resolution of the appeal in this case is the firm recognition by the courts that they lack authority to decide at this stage of a controversy such as this whether the grievance procedure and arbitration process provided for in the new contract is applicable to Hildabridle's discharge. All the Union needs to show to remove from the courts the power to decide whether this grievance is arbitrable under the new contract is that there is at least some possibility that it is. Whether this dispute is arbitrable under the new contract is an issue that the parties must submit in the first instance to the arbitrator. In *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Supreme Court spoke with clarity and firmness concerning the obligation of the parties to submit to the arbitrator the issue of arbitrability in a case such as this. The Court said:

> [T]he judicial inquiry under § 301 [of the LMRA] must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* at 582–83, 80 S.Ct. at 1353.

It cannot be said with "positive assurance" that the arbitration clause in the new contract cannot be applicable to this dispute. All that needs to be shown, and it was clearly shown in this case, is that because Hildabridle was an economic striker, and there had been no adjudication of a right to discharge him during the strike, he remained an employee. He was not effectively discharged until the company refused to reinstate him when the new contract went into effect. It is up to the arbitrator, therefore, to decide in the first instance whether the grievance procedure and arbitration promise in the new contract are applicable to Hildabridle's discharge. If he decides that they are, he then can go on to decide on the merits the issue of the justification for the discharge.

▮ The National Labor Relations Board also has the authority to decide whether there was justification for firing a striker during an economic strike. Board jurisdiction, however, does not bar an obligation to arbitrate the same dispute. The "congressional policy [is] in favor of settlement of disputes by the parties through the machinery of arbitration...." *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353. The Board has a specific policy of deferring to arbitration of disputes where it also has jurisdiction. *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 270, 84 S.Ct. 401, 408, 11 L.Ed.2d 320 (1964); *Smith v. Evening News Ass'n,* 371 U.S. 195, 198 n. 6, 83 S.Ct. 267, 269 n. 6, 9 L.Ed.2d 246 (1962). Further, the fact that the Board refused to issue a formal complaint on behalf of the Union against the company for discharging

---

**2.** Section 2(3) of the National Labor Relations Act provides, in relevant part: "The term 'employee' shall include any employee ..., unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute...." 29 U.S.C. § 152(3) (1982).

Hildabridle is not controlling. *Luckenbach Overseas Corp. v. Curran*, 398 F.2d 403, 406 (2d Cir.1968). *See* R. Gorman, *Labor Law*, ch. 23, § 12, at 568–73 (1976).

■ Finally, there is an additional significant consideration establishing that the issue of the arbitrability of this dispute is for the arbitrator in the first instance. The fact is that the parties themselves agreed to disagree about whether the dispute was arbitrable. This alone under *Warrior & Gulf* is enough to require submission of the issue of arbitrability to the arbitrator.

■ Our jurisdiction to interfere with contract arbitrations set up in collective bargaining agreements is highly restricted. *International Union v. E-Systems, Inc.*, 632 F.2d 487, 489 (5th Cir.1980), *cert. denied*, 451 U.S. 910, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981); *Boise Cascade Corp. v. United Steelworkers of America, Local 7001*, 588 F.2d 127, 128 (5th Cir.), *cert. denied*, 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979). We conclude that the district court was in error in refusing to order arbitration of the Union's grievance involving the asserted discharge of Hildabridle for alleged picket line misconduct during an economic strike while there was no contract in effect. Under well-established legal authority, the issue of whether this dispute falls under the arbitration clause of the newly-instituted collective bargaining agreement between the parties must be submitted to an arbitrator pursuant to that agreement since we cannot say with positive assurance that the arbitration clause of that agreement is not susceptible to an interpretation that covers this dispute. The case will be remanded to the district court for the issuance of an order directing the parties to proceed to arbitration under the terms of the December 1982 collective bargaining agreement.

REVERSED AND REMANDED.

