**OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION LOCAL NO. 4–23, et al., Plaintiffs-Appellants,**

v.

**AMERICAN PETROFINA CO. OF TEXAS, Defendant-Appellee.**

No. 84–2322.

United States Court of Appeals, Fifth Circuit.

July 8, 1987.

Rehearing and Rehearing En Banc Denied Aug. 6, 1987.

Provost, Umphrey, McPherson & Swearingen, M. Diane Dwight, Port Arthur, Tex., for plaintiffs-appellants.

Goins, Underkofler, Crawford & Langdon, Durwood D. Crawford, Steve Kardell, Jr., Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, WILLIAMS and HILL, Circuit Judges.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

(Opinion May 6, 1985, 5th Cir.1985, 759 F.2d 512)

JERRE S. WILLIAMS, Circuit Judge:

Appellants Oil, Chemical and Atomic Workers International Union Local No. 4–23 (OCAW) and Leo Max Hildabridle, Jr. contend that their dispute with appellee American Petrofina Company of Texas concerning Petrofina's undertaking to discharge Mr. Hildabridle must be submitted to arbitration. Petrofina contends that it has no duty to arbitrate the matter because there was no employment contract in effect when Mr. Hildabridle was discharged. The

case is on remand from the United States Supreme Court, *American Petrofina Co. of Texas v. Oil, Chemical and Atomic Workers Int'l Union Local No. 4–23,* —— U.S. ——, 106 S.Ct. 2912, 91 L.Ed.2d 541 (1986), with instructions to reconsider the case in the light of *AT & T Technologies Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). We have done so, and we conclude that the question of the right of the company to have discharged Mr. Hildabridle must be submitted to arbitration under the terms of the collective bargaining agreement between the parties.

### I.

The facts of this case were set out in detail in our prior opinion, 759 F.2d 512 (5th Cir.1985). We repeat them here briefly. On January 8, 1982, appellant OCAW's collective bargaining agreement with appellee Petrofina expired, and an economic strike was undertaken by OCAW at appellee's Port Arthur, Texas, refinery. On February 20, 1982, appellant Hildabridle, an OCAW member and a striker, allegedly brandished a knife at the company's security guards on the picket line. Hildabridle was charged by local authorities with committing several misdemeanors. More than a year and a half later, Hildabridle was tried on one of the charges, making "a terroristic threat." On November 8, 1983, he was acquitted of the charge, and all other charges against him were dropped by the district attorney.

Meanwhile, on May 27, 1982, Petrofina had sent Hildabridle a letter informing him that he was being terminated because of the knife-brandishing incident. OCAW immediately requested that the General Counsel of the National Labor Relations Board (NLRB) charge Petrofina with committing an unfair labor practice under Section 8 of the National Labor Relations Act (NLRA), 28 U.S.C. § 158, in undertaking to discharge Hildabridle. On July 21, 1982, after Hildabridle's indictment and sixteen months before his acquittal, the General Counsel refused to charge the company with a violation of the NLRA. He stated his conclusion that the company had a justified good faith belief that Hildabridle had misbehaved on the picket line.

After a strike lasting approximately eleven months, on December 20, 1982, the workers agreed to return to work. OCAW and Petrofina approved a new collective bargaining agreement that contained grievance and arbitration provisions identical to those contained in the agreement that had expired the previous January. Under the provisions of the new contract, the matter of a termination such as Hildabridle's was an arbitrable dispute if the termination was covered by the agreement.

OCAW and Petrofina at the same time also signed a back-to-work agreement. In it, the parties agreed to disagree about the arbitrability of Hildabridle's termination: "The Union's position is that such action is subject to the grievance and arbitration provisions and the Company's position is that it is not." OCAW demanded arbitration of the dispute under the terms of the new contract and claimed a violation of that contract when Petrofina refused. OCAW then filed suit under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, claiming that the company had violated the collective bargaining agreement.

The district court found that the company had no duty to arbitrate the dispute. The court reasoned that the dispute fell outside the coverage of the old contract because the incident occurred six weeks after that contract had expired, and that Hildabridle fell outside the coverage of the new contract because he was fired nine months before that contract was signed. 586 F.Supp. 643 (E.D.Tex.1984). In our earlier decision, we reversed, holding that the dispute was arguably arbitrable and therefore should be submitted to the arbitrator for his determination as to its arbitrability. 759 F.2d 512 (5th Cir.1985). The Supreme Court vacated our opinion in light of their decision in *AT & T Technologies Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), and remanded the case

to us for reconsideration. —— U.S. ——, 106 S.Ct. 2912, 91 L.Ed.2d 541 (1986).

## II.

In *AT & T Technologies*, the Supreme Court offered guidance in the application of four central principles in the law of labor arbitration, all derived from the *Steelworkers Trilogy* cases of 1960.[1] As we recently explained:

> The cornerstone of these principles is that the duty to submit a dispute to arbitration arises from contracts, therefore a party cannot be compelled to arbitrate a dispute if he has not agreed to do so. [*AT & T Technologies*, 106 S.Ct.] at 1418.
>
> The second principle is that the question of whether the parties agreed to arbitrate a dispute is to be decided by the court, not the arbitrator. *Id.* The third principle is that courts should not determine the merits of the underlying grievance, even if it appears to be frivolous. *Id.* at 1419. The court is only to determine whether the grievance is arbitrable.
>
> The fourth and final principle is that when a contract contains an arbitration clause, there is a presumption of arbitrability unless the court determines "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id., quoting Warrior & Gulf,* 363 U.S. at 583, 80 S.Ct. at 1352–53.

*Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO, Lodge No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 221 (5th Cir.1987). As the Court noted in *AT & T Technologies,* "[t]hese precepts have served the industrial relations community well, and have led to continued reliance on arbitration, rather than strikes or lockouts, as the preferred method of resolving disputes arising during the term of a collective-bargaining agreement. We see no reason either to question their validity, or to eviscerate their meaning by creating an exception to their general applicability." 106 S.Ct. at 1418.

Notwithstanding the fact that these principles have been applied effectively countless times in resolving labor disputes, in particular situations there is difficulty in giving full effect to all four principles simultaneously. For example, in deciding whether or not a dispute is arbitrable, a court must often refer to substantive contract terms or facts relevant to the application of those terms. "The court's obligation in deciding arbitrability [might] thus comprehend many of the matters central to the arbitration itself. At this point, the *Trilogy*'s principles of contractualism and avoidance of the merits collide."[2]

The occasion for the Supreme Court's *AT & T Technologies* decision was the reliance by the Seventh Circuit on the practice of referring the question of arbitrability, in the first instance, to the arbitrator. Such a practice was followed in cases where an investigation of either the facts or the intent of the parties in framing the collective bargaining agreement (1) was necessary to decide the arbitrability issue and (2) would be dispositive of much of the underlying dispute. Allowing the arbitrator to conduct the investigation was viewed as a useful way for the court to avoid infringing on the arbitrator's prerogative to decide the merits, thereby abiding by the third *Trilogy* principle.

*AT & T Technologies,* however, held that the practice of allowing the arbitrator to pass on the question of arbitrability over the objection of one of the parties was not authorized, for that practice failed to abide by the second *Trilogy* principle: "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration

---

**1.** *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**2.** Note, "Arbitration After *Communications Workers:* A Diminished Role?," 100 *Harv.L.Rev.* 1307, 1311 (1987).

cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." 106 S.Ct. at 1419, *quoting John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964). As for the third *Trilogy* principle, the Court did not intimate any recognition that it might conflict with the judicial determination of arbitrability: "a court is not to rule on the potential merits of the underlying claims. Whether 'arguable' or not, indeed even if [they appear] to the court to be frivolous," the parties' claims are not to be weighed. *Id.* After all, if the arbitration clause applies, then "[t]he agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Id.*

### III.

■ Applying the *Trilogy* and *AT & T Technologies* principles to the instant case, our inquiry is whether the dispute concerning Hildabridle's discharge is arbitrable under the new collective bargaining agreement entered into by the parties in December, 1982.[3]

Under the terms of the grievance and arbitration provisions in the Articles of Agreement signed by both Petrofina and OCAW on December 20, 1982, matters concerning the disciplinary discharge of employees are arbitrable. Such disputes first become grievance claims under the general provisions of Section 1 of Article IV: "[a]ny employee or group of employees, directly and personally affected[,] or authorized Union representatives or officials, referred to as 'Complainant' for the purpose of this Article, may present to the Company for adjustment any grievance or complaint of unfair treatment, as distinguished from a matter of collective bargaining." Matters specifically concerning discharges are grievable under Section 20 of the same article. Then under Article XV, Section 2,

the standard for discipline and discharge is "just cause".

Failing settlement of a grievance by the parties, Section 3 of Article IV provides that such unresolved grievances are then arbitrable: "Any complaint which has properly been submitted ... in accordance with the procedure set forth above may, if not settled to the satisfaction of the Complainant[,] be referred to arbitration by the Complainant or by the Workmen's Committee...." Finally, Article V of the agreement sets out the specific procedures for the arbitration of disputes not settled under Article IV's grievance provisions.

The critical legal inquiry in this case is whether Hildabridle continued as an "employee" of Petrofina as an economic striker. He had a right under the NLRA to return to his job at the end of OCAW's strike unless: (1) he had been permanently replaced, *see NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345–46, 58 S.Ct. 904, 910–11, 82 L.Ed. 1381 (1938); (2) he had "obtained regular and substantially equivalent employment," *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378, 88 S.Ct. 543, 545–46, 19 L.Ed.2d 614 (1967); (3) the company could show that he could not be reinstated because of "legitimate and substantial business reasons," *The Laidlaw Corporation*, 171 N.L.R.B. 1366, 1370 (1968); or (4) he engaged in sufficient misconduct "to remove [him] from the protection of the [National Labor Relations] Act.... *NLRB v. Moore Business Forms*, 574 F.2d 835 (5th Cir.1978); *Jerr-Dan Corp.*, 237 N.L.R.B. [302], 98 L.R.R.M. 1569 (1978)." *Star Meat Company v. NLRB*, 640 F.2d 13, 14 (6th Cir.1980). *See also International Union of Electric, Radio and Machine Workers v. Ingram Manufacturing Co.*, 715 F.2d 886, 890 (5th Cir. 1983), *cert. denied*, 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984).

---

**3.** Appellant OCAW also argues that Hildabridle's discharge is arbitrable under the terms of the collective bargaining agreement that expired on January 8, 1982. We reject this contention for the reasons ably explained by the district court concerning the applicability of *Nolde Brothers,*

*Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), to this dispute. That contract was no longer in effect when the dispute arose.

There is no inference in the record or the briefs that any of the first three possible disqualifications apply to Hildabridle's discharge. Petrofina relied on the fourth disqualifying circumstance when it notified Hildabridle of his termination, claiming that Hildabridle was discharged for brandishing a knife at the company's security guards while he was on the picket line. The company argues that Hildabridle's misbehavior deprived him of his statutory protection, and that his discharge was therefore effective, so that Hildabridle was not an "employee" under the December collective bargaining agreement. But the mere claim of misconduct, even in good faith, cannot end the matter. Hildabridle has the right under the statute to remain an employee if the company's assertion of cause was false, mistaken, or inadequate to justify termination. The company's bare assertion of an employee's misbehavior is not enough, when challenged, to deprive Hildabridle of his right to remain an "employee" under the law.

## IV.

A step-by-step analysis leads to resolution of the issue of whether the union's grievance on behalf of Hildabridle is arbitrable. The first step is the recognition that as an economic striker Hildabridle was not subject to discharge by the company absent one of the grounds mentioned earlier. The only ground at issue in this case is misconduct.

The fact that the General Counsel of the NLRB did not file an unfair labor practice charge against Petrofina for undertaking to discharge Hildabridle for misconduct during the strike is not persuasive either way. It is established that the failure of the General Counsel to file unfair labor practice charges is not a decision clearing anyone of unfair labor practices. *Luckenbach Overseas Corp. v. Curran*, 398 F.2d 403, 406 (2d Cir.1968); R. Gorman LABOR LAW, Ch. 23 § 12, at 571 (1976). Further, the fact that Hildabridle was under a misdemeanor indictment, a fact that the General Counsel recognized had some persuasiveness in his reaching his decision, but that

Hildabridle later was acquitted also has no persuasive effect one way or the other with respect to whether Hildabridle was properly discharged by the company.

The technical analysis of the nature of the grievance in this case is critical to its understanding. There was no contract in effect at the time of Hildabridle's purported discharge for strike misconduct. Thus, the company is correct in arguing that there was no "contract" right to remain in employment at that time. Whatever right there was was a statutory right and not a contract right. The critical point, however, is that unless Hildabridle's discharge was justified under the law, he was still an employee and subject to reinstatement and entitled to be treated as an employee by the company when the new contract was signed. It suffices the company nothing to claim a right to discharge Hildabridle on the ground that there was no contract if discharging Hildabridle was unlawful, and he continued to be an employee under the law.

It follows that the actual subject of the grievance is not Hildabridle's discharge during the strike. The contract does not cover that discharge. The actual issue in the grievance and before the arbitrator is whether in law Hildabridle was still an employee at the time the new contract was signed. If so, the failure to reinstate him was a discharge under the new contract, and Hildabridle was entitled to claim the "just cause" provisions for discharge, as of that time. Obviously, there would be no just cause for discharge if Hildabridle in law was still an employee because he had done nothing to justify Petrofina's earlier undertaking to discharge him.

This analysis is the key to the case. If the undertaking to discharge Hildabridle during the strike was justified, Hildabridle was discharged under the NLRA as well. If this is the situation, he was not entitled to reinstatement as an employee when the strike ended and the new contract went into effect. On the other hand, if his purported discharge during the strike was unlawful, then he was entitled to be reinstated as an employee at the time the strike

ended and the new contract went into effect. If the company did not reinstate him and yet was under a legal obligation to do so, a question of whether there was just cause to discharge is raised.[4]

This step-by-step analysis must lead to the conclusion that this grievance is arbitrable. The actual narrow issue before the arbitrator will be whether Hildabridle was an employee on the day the contract went into effect and whether there was just cause to discharge him at that time. Assuming that Hildabridle's conduct had not otherwise raised a just cause issue since the purported discharge, it appears that the resolution of the just cause issue under the contract will depend upon whether his alleged misconduct justified Petrofina in undertaking to discharge him during the strike.[5] The issue is just cause for discharge under the new contract and is arbitrable although the arbitrator will need to consider conduct which took place before the contract was made because of the statutory requirements of the National Labor Relations Act. It cannot be overemphasized that Hildabridle was entitled to claim the rights of an employee under the new contract through the statutory right to reinstatement unless he was properly discharged for misconduct.

Petrofina contends that contract rights and statutory rights are wholly independent of each other and that while Hildabridle might have a statutory right of reinstatement he had no contract right to reinstatement. This contention cannot prevail. In the first place the contract itself relates to and is in terms dependent upon the law. Under the contract terms, the company's, union's, and employees' rights specifically are made subject to rights established by law. Article XXI, Validity of the Contract, provides in Section 1: "This Agreement is subject to all present and future applicable laws, orders, rules and regulations of any governmental authority having jurisdiction in the premises, . . . ." This provision inescapably makes the company's right to discharge or to refuse to reinstate Hildabridle subject to his statutory right to remain an employee when the contract went into effect unless he had been justifiably discharged.

Second, the importance of the role of the statute in this case can best be seen by considering a hypothetical situation. Suppose, for example, that because of animosity against a particular employee a company supervisor fabricated a claim of threatened violence on the picket line. After a one-sided inquiry since the union and company were not talking about such matters at this point, the company, taking the supervisor's accusation at face value, undertook to discharge the employee. Under the law the employee continued without any question in employee status. Yet, the company could not rely at this point on the failure of the General Counsel to bring a charge. The General Counsel's decision is not a decision of the NLRB. He does not hold a full adjudication in determining whether or not to bring a charge. As pointed out above, clear authority is to the effect that failure of the General Counsel to bring an

---

**4.** The company argues strenuously that the back-to-work agreement claim by the company that the discharge was not arbitrable in and of itself proves lack of company agreement to arbitrate. Such a unilateral assertion of lack of agreement to arbitrate cannot serve to destroy an arbitration agreement. Otherwise all this or any other company would have to do to avoid its general agreement to arbitrate grievances would simply be to announce that its position was that a particular grievance was not arbitrable. A multitude of cases deny any such unilateral bootstrap device to escape the obligation to arbitrate. The company made a typical general promise to arbitrate disciplinary grievances of employees under the contract. If Hildabridle was an employee under the contract, the company's unilateral disavowal of an obligation to arbitrate his disciplinary grievance is . totally unavailing.

**5.** The assumption is made as the basis of the analysis because the Court must be vigorous in avoiding any decision on the merits of the grievance. If our analysis were based upon a conclusion that the only issue before the arbitrator in deciding just cause was the picket line conduct, the court would be deciding on the merits part of the case before the arbitrator. Thus, there may be facts we do not know. There may be some reason, even assuming Hildabridle was an employee entitled to reinstatement when the new contract was signed, that would justify his discharge for just cause. Such an issue is one on the merits for the arbitrator.

unfair labor practice charge does not acquit a company in any way of such a charge.

■ We stress that there is not the slightest indication that the above hypothetical situation constitutes what occurred in this case. What happened on the picket line would be an issue for the merits, and we would not consider it. The hypothetical situation is set out here only to show that the law does not leave the legal rights of employees during a strike in the unilateral hands of the company with protection only in the NLRB. Although a company acts in good faith, and its good faith leads the General Counsel not to file charges, the employee's right to reinstatement still stands under the law. This proposition is made clear in *NLRB v. Industrial Cotton Mills*, 208 F.2d 87, 92 (4th Cir.1953), *cert. denied*, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954). In that case the Court said: "there is a right guaranteed by the Act— the right of an employee to reinstatement after a strike. That right is ... not forfeited by the honest but mistaken belief of the employer that the employee has been guilty of strike misconduct, ..."

It is well established that an arbitrator's jurisdiction under a collective contract often overlaps the statutory unfair labor practice jurisdiction of the National Labor Relations Board. Indeed, an entire field of jurisprudence has grown up with respect to the deference that the Board will give arbitrators' decisions in cases where those decisions also involve unfair labor practices and bargaining rights under the National Labor Relations Act. A number of years ago the NLRB itself undertook to regularize the considerations which would lead it to defer to contract labor arbitration in cases in which it also had jurisdiction. *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955). On the recognition of and broad implementation of the principle that contract enforcement actions in court or by arbitration can involve unfair labor practice issues, see *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 270, 84 S.Ct. 401, 408, 11 L.Ed.2d 320 (1964); *Smith v. Evening News Ass'n*, 371 U.S. 195, 198 n. 6, 83 S.Ct. 267, 269 n. 6, 9 L.Ed.2d 246 (1962); *Inter-*

*national Union (UAW) v. E–Systems, Inc.*, 632 F.2d 487, 490 (5th Cir.1980), *cert. denied*, 451 U.S. 910, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981). Finally, we call particular attention to the decision in *International Union of Electrical, Radio & Machine Workers v. General Electric Co.*, 407 F.2d 253, 264 (2d Cir.1968), *cert. denied*, 395 U.S. 904, 89 S.Ct. 1746, 23 L.Ed.2d 217 (1969). One of the grievances ordered to arbitration in that case involved the issue of whether strikers had been discharged by the company at the conclusion of the strike. The Regional Director of the NLRB had refused to issue an unfair labor practices complaint on the grounds of insufficient evidence. The company claimed this refusal constituted a binding determination of the dispute and precluded the union from seeking relief through arbitration. The Court held that this action of the Regional Director (acting for the General Counsel in such matters) "was administrative only." The court ordered arbitration of the discharge disputes.

We must conclude, therefore, that Hildabridle's grievance is arbitrable under the post-strike contract. The arbitrator has the power under that contract to decide whether the company had "just cause" to refuse to reinstate him as an employee when the strike ended and the contract went into effect. To resolve that issue, the arbitrator will have to look in part at least at the legal rights of the parties as of the time the company undertook to discharge Hildabridle during the economic strike. Obviously in this grievance, the union must prove that Hildabridle did not engage in conduct which justified Petrofina in discharging him during the economic strike. Only by this means can the union establish that under the law Hildabridle was still legally an employee of the company at the time the strike ended and was entitled to reinstatement.

The judgment of the district court must be reversed and a judgment rendered directing arbitration of appellants' grievance under the terms of the collective bargaining agreement.

REVERSED AND REMANDED.

CLARK, Chief Judge, dissenting:

I perceive the issue which divides the parties here is the identical issue presented in *AT & T Technologies v. Communications Workers:* Did the "collective bargaining agreement create a duty for the parties to arbitrate the particular grievance"? I agree with Judge Williams, as the district court did, that the resolution of this issue does not turn on the merits of Hildabridle's "discharge." (If the merits of the discharge were pertinent, all are in agreement that it would have presented a matter which should have been submitted to the arbitrator.) Rather, the issue turns on whether the back-to-work agreement between OCAW and Petrofina excluded Hildabridle's discharge from the arbitration provision of the new collective bargaining agreement.

The district court found that in the back-to-work agreement the parties specifically agreed to disagree over whether Hildabridle's grievance was arbitrable. The court concluded that therefore the parties could not have agreed to arbitrate the grievance. Because the panel majority declines to affirm the district court's proper legal determination of the parties' agreement—an inquiry clearly vested in that court under *AT & T Technologies*—I respectfully dissent.