**MAIL–WELL ENVELOPE, CLEVELAND DIVISION, A Company of Great Northern Nekoosa Corporation, Plaintiff–Appellant,**

**v.**

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT 54, Defendant–Appellee.**

No. 89–3689.

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1990.

Decided Oct. 10, 1990.

Lee J. Hutton (argued), Marc J. Bloch, and Charles A. Linn, Duvin, Cahn & Barnard, Cleveland, Ohio, for plaintiff-appellant.

David Roloff (argued), Gaines & Stern, Cleveland, Ohio, for defendant-appellee.

Before JONES and NELSON, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

## I

Mail–Well Envelope appeals the decision of the district court requiring it to submit to arbitration its discharge of three of its employees for allegedly "illegal misconduct" during an economic strike. It is the contention of Mail–Well that it had no obligation to arbitrate the discharges because its collective bargaining agreement (CBA) with the International Association of Machinists and Aerospace Workers (Union) had expired prior to the discharge of the employees, that its new CBA, which terminated the strike, did not become effective until after their discharge and that neither the former CBA nor the subsequent CBA created any contractual duty to arbitrate these discharges. The Union, on the other hand, while conceding that the former CBA created no contractual duty to arbitrate, contends that the subsequent CBA, which ended the strike, did create such a duty. We agree with the district court that Mail–Well had the contractual duty, under the CBA that ended the strike, to arbitrate these discharges. Accordingly, we AFFIRM.

The earlier CBA, which was operative from June 13, 1985 until June 12, 1988, was followed by a strike when Mail–Well and the Union were unable to agree on a new contract. During the strike, Mail–Well obtained a temporary restraining order in state court based on alleged illegal misconduct on the part of strikers. On or about July 10, 1988, the Union, at a membership meeting, ratified a tentative new contract, and the contract became effective on July 13, 1988. However, by letters dated July 12, 1988, copies to the Union, Mail–Well advised each of the three employees, Parrish, Roginski and Stacho, that "your employment with Mail–Well Envelope is hereby terminated for engaging in serious illegal misconduct during the recent strike."[1]

When Mail–Well failed to recall to work Parrish, Roginski and Stacho on July 13, the Union filed a grievance under the new CBA. Mail–Well objected, however, to the processing of the grievance under the new contract and also refused to arbitrate the issue. Mail–Well then filed a declaratory judgment action to obtain a ruling that it had no obligation to do either and the Union filed a counter-claim contending that it was obligated to do both. On cross-motions for summary judgment, the district court granted the Union's motion and denied Mail–Well's motion.

The Union filed a complaint with the National Labor Relations Board, contending that the action of Mail–Well in denying employment to Parrish, Roginski and Stacho was a violation of the National Labor Relations Act (NLRA), but the Regional Director refused to issue a complaint. The Union then appealed to the General Counsel of the Board who denied relief. These results occurred prior to the decision of the district court in this case.

---

1. The Union concedes that the discharge of these employees, if it was effective, occurred before the new contract went into effect.

## II

In *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1985), the Supreme Court, relying on earlier decisions of that Court, set out the propositions of law necessary to decide the issue presented to us. The first is that a party cannot be required to arbitrate an issue unless it has contracted to do so. *Id.* at 648, 106 S.Ct. at 1418. The second is that the question whether a CBA has created a duty to arbitrate is a question to be decided by the court, not the arbitrator. *Id.* at 649, 106 S.Ct. at 1418.[2] The third proposition is that, in deciding whether a grievance should be submitted to arbitration, the court must not rule on or be concerned with the merits of the underlying claim. *Id.* Lastly, where the CBA has an arbitration clause, there is a "presumption of arbitrability...." *Id.* at 650, 106 S.Ct. at 1419. "Doubts should be resolved in favor of coverage." *Id.* (citing *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

## III

The Union contends that several provisions of the CBA require arbitration of this controversy. Article XII, Section 2(a), provides, "[a] grievance is defined as a dispute concerning the interpretation or application of the specific terms of this Agreement." After setting out the steps in the grievance procedure, Article XII, Section 3(a), provides, "[i]f a dispute has not been settled pursuant to the procedure hereinbefore provided, it shall be submitted to arbitration during the term of this Agreement, if either party requests...." There is no dispute that grievances were timely filed in behalf of these three employees and that Mail–Well has refused to process them and to submit the issue to arbitration.

The contract provisions upon which the Union relies and contends must be interpreted and applied by an arbitrator include Article IX, Section 2(c), which provides in part that, "[i]n recalling employees laid-off, reverse seniority shall prevail, that is, the laid-off employees with the most seniority will be recalled first (1st)...." Article IX, Section 5(a), provides in part that, "[a]n employee shall forfeit seniority for any of the following reasons:

. . . .

(3) discharge for cause."

The Union also relies on an ancillary agreement to the new CBA that the parties made at the time they agreed to the CBA, the non-retaliation provision of which, the Union contends, requires interpretation and application:

> This confirms the Parties understanding with respect to treatment by the Company and Union of returning to work employees.... The Company agrees not to take any action to the detriment of an employee who was involved in the strike during the strike period except for illegal conduct * where same occurred.
>
> . . . .
>
> * Illegal conduct for purposes of the understanding shall be defined as 'any conduct for which an employee can be barred from employment after a strike under the rules of the National Labor Relations Act, the National Labor Relations Board rulings or court interpretations.'

## IV

■ Mail–Well appears to argue, first, that the admitted fact that these discharges occurred before the effective date of the new contract ends the matter. Because there was no contract in existence at the time of the discharges, Mail–Well argues, there could be no obligation to arbitrate the discharges. It appears clear to us, however, that the parties *could* create an obligation to arbitrate these discharges by the new contract. Mail–Well points to no law, and we know of none, which would

---

2. The Supreme Court at this point in its opinion recognized that it was legally possible for the parties, by their contract, to vest in the arbitrator the authority to decide the threshold question of whether the issue is arbitrable. However, the Court makes clear that such authority is vested in an arbitrator only if the parties "clearly and unmistakably" so agree. 475 U.S. at 649, 106 S.Ct. at 1418. The Union does not here contend that the CBA authorizes the arbitrator to determine whether this issue is arbitrable.

undercut the power of Mail–Well and the Union so to contract.

Mail–Well further argues that the quoted provisions in Article IX, Section 2(c) and Section 5(a)(3), relating to the recalling of "laid-off" employees based on seniority unless they had been discharged for "cause," creates no obligation to arbitrate because these discharged employees were not "laid-off employees" and were discharged for "cause." Mail–Well also argues that the provision in the non-retaliation agreement relating to "returning to work employees" creates no obligation to arbitrate because these employees were not "returning to work" employees since they had been discharged for cause prior to the inception of the new contract.

The Union's position, which we think is correct, is that Mail–Well's arguments have to do with the validity of the Union's contentions before an arbitrator and have nothing to do with the duty to arbitrate. The Union points out that, under *AT & T Technologies, supra,* we are admonished not even to consider the strength of the Union's position before an arbitrator. On the contrary, the Union correctly argues, the arbitrability of these issues is to be determined by the grievance and arbitration provisions in the contract. Since a grievance is broadly defined "as a dispute concerning the interpretation or application of the specific terms" of the contract, and since we have here such a dispute and since the contract provides for arbitration of grievances that are not settled, the contract requires arbitration. Thus, we conclude, it is for an arbitrator to interpret and apply these provisions of the CBA and thereby determine whether these discharged employees would be entitled to relief if they were not discharged for "cause," and if so, whether they were discharged for "cause."

### V

We could arrive at the same result in this case by following the doctrine of *Oil, Chemical and Atomic Workers Int'l Union Local No. 4–23 v. American Petrofina Co. of Texas,* 820 F.2d 747 (5th Cir.1987),

upon which the Union relies as a fallback position. This case presents an analogous situation in that, after a CBA had expired and before a new CBA was reached and during an economic strike, a striker was discharged for alleged misconduct. The union sought arbitration of the discharge which the employer refused. The grievance and arbitration clauses of the new CBA provided, in general, that "an employee" had grievance and arbitration rights. The question then became, the court reasoned, whether the striker "continued as an 'employee' of Petrofina as an economic striker." *Id.* at 750. The court pointed out that, as an economic striker, he was entitled under the NLRA to return to his job, absent certain circumstances, after the strike. The only circumstance arguably present, the court said, that would undercut the striker's right to return would be that "he engaged in sufficient misconduct 'to remove [him] from the protection of the [National Labor Relations] Act....'" *Id.* (Citations omitted.) Thus, the court reasoned, unless there was sufficient misconduct on the part of the striker to place him outside the protection of the Act, he had a statutory right to return to work. The court then said:

> The actual issue in the grievance and before the arbitrator is whether in law [the striker] was still an employee at the time the new contract was signed. If so, the failure to reinstate him was a discharge under the new contract, and [the striker] was entitled to claim the 'just cause' provisions for discharge, as of that time.

*Id.* at 751.

The strikers in the instant case had a statutory right to return to work and continue as employees, after the strike ended, unless they were guilty of such conduct as to disqualify them for protection under the NLRA. If they were employees, the failure to reinstate was a discharge under the new contract, and they were entitled to rely on the provisions for grievance and arbitration of a discharge under the new contract.

*Peerless Importers Inc. v. Wine, Liquor & Distillery Workers Union Local One,*

903 F.2d 924, 925 (2d Cir.1990), involved the question "whether a new collective bargaining agreement providing for arbitration applies to a claim for reinstatement by an employee discharged prior to the new agreement." There the court held that the arbitration provision in the new agreement did not apply to such a claim. In reaching this conclusion, the court disagreed with *American Petrofina, supra,* saying: "While this analysis has surface appeal, we are not persuaded by the Fifth Circuit's reasoning." *Id.* at 928. The court further said "[T]he arbitration clause of a new agreement may not be used to reach back to cover disputes arising before the agreement was executed, unless such preexisting disputes are brought within the scope of the clause. We do not believe the arbitration clause of the new agreement is 'susceptible of an interpretation that covers the asserted dispute.' " *Id.* (Citation omitted.) The arbitration clause in the case, the court said, "is not of unlimited scope but is restricted to disputes 'arising under this Agreement and during its term.' " *Id.* at 927.

Without indicating agreement or disagreement with the conclusion of the court in *Peerless Importers* that the arbitration provision there was not sufficiently broad to require arbitration, as heretofore indicated we believe that the arbitration provision here is sufficiently broad. In reaching this conclusion, we are following the direction of *AT & T Technologies, supra,* that:

> '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' citing *Warrier [Warrior] & Gulf,* 363 U.S. at 582–583 [80 S.Ct. at 1353] (citation omitted). Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of the contract or the performance of any obligation hereunder....' *Id.* In such

cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' *Warrior & Gulf* at 584–585 [80 S.Ct. at 1354] (citation omitted).

*AT & T Technologies v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986).

The dissent appears to contend that the issues sought to be arbitrated by the Union have to do with whether they are subject to arbitration. The Union contends that these issues have to do with the merit of its position that it seeks to arbitrate. The question seems to become almost metaphysical. The key to solving this vexing question, we believe, is simply to look to the grievance and arbitration provisions in the CBA as we are directed to do by *AT & T Technologies.* In doing so, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *id.,* particularly since the clause provides for ultimate arbitration of all grievances defined as "a dispute concerning interpretation or application of the specific terms of the Agreement."

## VI

■ As has been stated, the Regional Director of the NLRB and, upon review, the General Counsel, have refused to issue a complaint, upon the Union's application, because of Mail–Well's refusal to place these strikers on its payroll. Mail–Well appears to argue that these determinations are somehow a bar by operation of law to the Union's claim here. This is clearly not so. *See American Petrofina, supra,* at 753 (providing overview of relevant cases).

■ Mail–Well alternatively argues that the parties, by the ancillary agreement to the CBA, contracted to be bound by the determination of the General Counsel of the Board not to issue a complaint with respect to the failure to place these strikers on the payroll. Mail–Well here relies on the non-retaliation provision which defines

"illegal conduct" as "any conduct for which an employee can be barred from employment after a strike under the rules of the National Labor Relations Act, the National Labor Relations Board rulings or court interpretations." It appears clear to us, however, that this provision did not make binding the decision of the General Counsel not to issue a complaint. The provision simply refers to such rules or rulings for the purpose of defining "illegal conduct."

## VII

The judgment of the district court requiring arbitration of these issues is therefore AFFIRMED.

DAVID A. NELSON, Circuit Judge, dissenting.

Although no collective-bargaining agreement was in effect when Parrish, Roginski and Stacho were discharged, and no obligation to arbitrate the discharges could have existed as of the time the discharges occurred, it was certainly within the power of the parties to enter into a new contract creating such an obligation retrospectively. The problem, as I see it, is that the parties never did so.

The new collective-bargaining agreement speaks as of July 13, 1988. It was executed on that date, according to Article XXV, and it expressly says that "[t]his agreement shall become effective the 13th day of July, 1988...." *Id.* Neither the principal agreement nor the ancillary agreement accompanying it provides for retroactivity.[1]

Only people who were "employees" on July 13 are given any rights under the new agreement, and only people who were "returning to work employees" on July 13 have protection under the ancillary agreement. Because Parrish, Roginski and Stacho were not Mail–Well "employees" on July 13, I think they are out of luck.

It was Abraham Lincoln, I believe, who popularized the conundrum about the sheep's tail. "If you call a sheep's tail a leg," Lincoln asked, "how many legs does the sheep have?" The answer, of course, is four; calling a tail a leg does not make it one. If the labor union called the three members of this panel Mail–Well "employees," similarly, that would not make us employees.

If Parrish, Roginski and Stacho were not in fact "employees" of Mail–Well as of July 13, there is absolutely nothing in the labor contract that makes their claims arbitrable. Arbitrability cannot turn on whether the union *asserts* that the men had employee status, for if arbitrability could turn on mere assertions, the union's *ipse dixit* could make anything in the world arbitrable. The question is whether the men were *actually* employees __ and in the absence of an agreement "clearly and unmistakably" giving an arbitrator authority to decide it, this question is one that only the courts can answer. *AT & T Technologies v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1985).[2]

My answer would be that the men were not employees on July 13. They could not have been employees at that point, except, perhaps, in the eyes of the National Labor Relations Board, because they had been fired the day before. They were not just "laid-off" within the meaning of that term

---

1. The failure to provide for retroactivity is particularly significant in light of Article XXIV, Section 1, which includes this acknowledgment:

   "The parties acknowledge that during the negotiations prior to the signing of this Agreement they had the unlimited right to make proposals with respect to any matter which could be the subject of collective bargaining, and that the understandings and agreements arrived at by the parties in good faith and after the exercise of that right and opportunity are set forth herein."

2. Although arbitrability issues are sometimes submitted to an arbitrator by agreement, see *Vic Wertz Distributing Co. v. Teamsters Local 1038,* 898 F.2d 1136, 1140 (6th Cir.1990), and *Interstate Brands Corp. v. Chauffers, Teamsters, Warehousemen and Helpers Local Union No. 135,* 909 F.2d 885, 890 (6th Cir.1990), that was not done here; the arbitrability issue was reserved for initial decision by the court in this case, and there can be no doubt that the issue is for the courts to decide. *Vic Wertz, id.; United Steelworkers v. Timken Co.,* 717 F.2d 1008, 1012 (6th Cir.1983).

as used in Article IX, Section 2; they were fired outright. The firing may have been unlawful under the National Labor Relations Act — and if so, statutory machinery existed for compelling reinstatement — but lawful or not, the firing was a fact. A former employee with a potential right of reinstatement is not a current employee, at least in common usage, and nothing in the new agreement requires that former employees be treated as if they were current employees.

Not a single provision in the agrement uses the term "employees" to refer to people who are not employees as of the time to which the agreement speaks. Article IX, Section 5(a), does not disprove this generalization; it merely says that employees will forfeit their seniority upon the occurrence of any of six events — one of which is "discharge for cause" — in the future. Thus if someone who was an employee as of July 13, 1988, were to be discharged for cause on July 14, this provision makes it clear that he would bring no seniority with him if rehired thereafter. The entire section is prospective; it tells current employees that they "shall" forfeit seniority for contingencies that may occur down the road somewhere.

It is true that in *Oil, Chemical and Atomic Workers Intl. Union Local No. 4–23 v. American Petrofina Co. of Texas*, 820 F.2d 747 (5th Cir.1987), a Fifth Circuit panel held, over the dissent of Chief Judge Clark, that the discharge of an economic striker for alleged violence on the picket line did not exclude the striker from the class of "employees" whose grievances were arbitrable under a subsequent collective bargaining agreement. "[U]nless [the striker's] discharge was justified under the law," the panel majority stated, "he was still an employee...." *Id.* at 751. As such, the panel continued, he would have the right to grieve the failure to reinstate him — and a wrongful failure to reinstate would be "a discharge under the new contract...." *Id.* If the refusal to reinstate ultimately proved to have been justifiable, on the other hand, the panel thought that the issue would still have been arbitrable, even though the arbitrator would be required to rule against the so-called "employee."

It did not seem to trouble the Fifth Circuit panel that if only the grievances of "employees" are arbitrable under the new contract, arbitration of the grievance of a person who proves not to have been an employee would be arbitration of a grievance that by definition is not arbitrable. This anomaly would not have troubled me very much either, I confess, but for the line of Supreme Court decisions that culminated in *AT & T Technologies*. The issue presented in *AT & T Technologies* was whether the arbitrability of a grievance filed under a collective-bargaining agreement contract was or was not to be determined by the grievance and arbitration provisions in the contract — *i.e.*, whether the question of arbitrability was properly left to the arbitrator. "Unless the parties clearly and unmistakably provide otherwise," the Supreme Court held, "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649, 106 S.Ct. at 1418. But if arbitrability is not to be decided by the arbitrator, absent a contract clearly providing otherwise, the Fifth Circuit's *Oil, Chemical and Atomic Workers* ruling seems very hard to justify — for what the court did, in that case, was to assume the jurisdictional predicate for arbitration, and then let the arbitrator decide whether the assumption was correct.

The *Oil, Chemical and Atomic Workers* case had come before the Fifth Circuit once before, and in an opinion reported at 759 F.2d 512 (5th Cir.1985), the court had held that "[w]hether this dispute is arbitrable under the new contract is an issue that the parties must submit in the first instance to the arbitrator." *Id.* at 515. The Supreme Court vacated the decision and sent the case back for reconsideration in light of *AT & T Technologies*. Although the Fifth Circuit obviously recognized, on reconsideration, that the original rationale would not pass muster under *AT & T Technologies*, the new rationale still, in essence, left the question of arbitrability to the arbitrator. The Fifth Circuit's second decision would

thus seem to suffer from the same deficiency as the first one.

In *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924 (2d Cir.1990), a unanimous Second Circuit panel found the reasoning of the Fifth Circuit's second opinion unpersuasive. If a new collective-bargaining agreement does not, by its terms, provide for arbitration of the claim of an employee discharged prior to the effective date of the new agreement, the Second Circuit held, it makes no difference whether the discharged employee asserts that he is entitled to reinstatement; the claim is not arbitrable unless the contract says it is arbitrable.[3] The *Peerless* contract provided that "no non-probationary *employee* shall be discharged without good or just cause" — and as the Second Circuit said, speaking through Judge Jon Newman,

> "If [the striker] was validly discharged on November 10, he was not an 'employee' on November 16, when the collective bargaining agreement became effective and reinstatement was refused. To compel arbitration on the basis of this provision would permit any former employee, no matter how long ago dismissed, to demand 'reinstatement' under the term of a new collective bargaining agreement and obtain arbitration of the reinstatement 'dispute.'" *Peerless*, 903 F.2d at 928.

Quoting *United States of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), Judge Newman went on to say that

> "... the arbitration clause of a new agreement may not be used to reach back to cover disputes arising before the agreement was executed, unless such

pre-existing disputes are brought within the scope of the clause. We do not believe the arbitration clause of the new agreement is 'susceptible of an interpretation that covers the asserted dispute.'" *Peerless, id.*

The arbitration clause in the case at bar, similarly, is simply not susceptible of an interpretation that covers anyone other than "employees." Because Parrish, Roginski and Stacho were not "employees," I would reverse the order in which the district court directed Mail–Well to proceed as if they were employees.

---

**3.** The district court opinion in *Peerless* discloses that the new collective-bargaining agreement said, as paraphrased by the court, that *"any complaint* arising under the agreement [and during its term] *involving questions of interpretation or application* shall be submitted to arbitration." 712 F.Supp. 346, 350 (S.D.N.Y.1989) (emphasis supplied). The quoted language is not unlike that of Article XII, Section 2(a) of the Mail–Well agreement, which provides for arbitration of "a dispute concerning the interpretation or application of the specific terms of this

agreement." If the *Peerless* arbitration clause did not provide for arbitration of the former employee's claim, notwithstanding that the claim involved a question of the interpretation or application of the terms of the agreement, I am not sure I see why the Mail–Well arbitration clause should be thought to have a broader effect. In both cases, of course, the claims allegedly arose during the term of the new agreement, because in both cases the new agreements were said to have created a duty to reinstate.