**PEERLESS IMPORTERS, INC., Petitioner,**

v.

**WINE, LIQUOR & DISTILLERY WORKERS UNION LOCAL ONE, Respondent.**

No. 87 Civ. 9072 (JMW).

United States District Court, S.D. New York.

April 17, 1989.

Allen B. Roberts, Roberts & Finger, John Doyle, III, and Anderson, Russell, Kill & Olick, New York City, for petitioner.

Victor Feingold, New Rochelle, N.Y., J. Warren Mangan, and O'Connor & Mangan,

P.C., Long Island City, N.Y., for respondent.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Petitioner Peerless Importers, Inc., a New York corporation ("Peerless"), brings this action to stay an arbitration with respondent Wine Liquor & Distillery Workers Union Local One ("Local One"). Local One now moves for summary judgment, pursuant to Fed.R.Civ.P. 56, to dismiss Peerless' application for a stay, and to compel Peerless to arbitrate. Peerless cross-moves for summary judgment on its petition to permanently stay the arbitration and moves for summary judgment against Local One on its motion to compel arbitration. Peerless also seeks a declaratory judgment that an "Agreement and Release" signed by a discharged Peerless employee is valid and enforceable. For the reasons stated below, Local One's motions are granted and Peerless' motions are denied.

## I. BACKGROUND

### A. The Underlying Dispute

Peerless, an importer and distributor of wine and liquor products, and Local One were parties to a collective bargaining agreement (the "old CBA") which expired on October 31, 1987. Since the parties failed to reach a new agreement when the old CBA expired, Local One began an economic strike against Peerless on November 1, 1987. After the strike began, negotiations on a new CBA continued. Local One was represented by a negotiating committee which included John Schumacher, a long time Peerless employee.

On November 10, 1987, while Local One was still on strike without a CBA in effect, a temporary replacement truck driver for Peerless, Lawrence Butler, reported to the New York City Police Department that he had seen Schumacher steal invoices and other documents on that date from his truck. After November 11, 1987, Schumacher made no further appearances on behalf of Local One at negotiating sessions with Peerless.

At a negotiating session held November 13, 1987, members of the negotiating teams discussed Schumacher. Peerless alleges that it "confirmed to Local One representatives the Mr. Schumacher had been *discharged* effective November 10, 1987." [1] (emphasis added). Local One alleges, however, that Peerless "announced ... that Schumacher would not be *reinstated* as an employee because of alleged strike misconduct." [2] (emphasis added). Whatever the characterization, Local One challenged Peerless' decision. Further, it is undisputed that at the November 13th meeting, the parties orally agreed to submit the Schumacher dispute to expedited arbitration before George Sabatella, commissioner of the New York State Mediation Board, who had already been mediating the negotiations for the parties.

On the evening of November 13, 1987, the parties reached a settlement on a new CBA. The membership of Local One ratified the new CBA on November 15, 1987, and ended their strike the same day. Peerless then reinstated striking workers on November 16.

Also on November 16, 1987, Frank Minichello, Vice–President of Local One, confirmed in a letter to Arbitrator Sabatella that both parties had approved his selection as arbitrator of the Schumacher dispute. That same day, Peerless mailed a letter to Schumacher "confirm[ing] that [his] employment with Peerless ... terminated effective November 10, 1987." [3]

On the evening of November 16, 1987, New York City Police detectives appeared at Schumacher's home and notified Schumacher that he was required to report to a police precinct the following day. Al-

---

**1.** Statement pursuant to Local Civil Rule 3(g) by Peerless [hereinafter "Peerless' 3(g)"] at ¶ 5.

**2.** Statement pursuant to Local Civil Rule 3(g) of Local One [hereinafter "Local One's 3(g)"] at ¶ 8.

**3.** Local One's Notice of Motion, Ex. E.

though Schumacher came into police custody, neither party presents any details as to what charges were brought against Schumacher, when they were brought, and whether Schumacher was either arrested or surrendered voluntarily. Local One contends that Schumacher was completely innocent of the crimes charged against him.

The parties dispute exactly what happened after Schumacher was taken into custody. Peerless alleges that, on November 17, 1987, Allen Roberts, Peerless' counsel in the labor dispute with Local One, received a phone call from J. Kenneth O'Connor, whom Peerless describes as "counsel for Local One".[4] Peerless asserts that O'Connor stated that he was at the 90th Precinct stationhouse with Schumacher and that Schumacher, in essence, wanted to strike a deal. Peerless further alleges that Roberts then spoke with Minichello, Vice–President of Local One, who told him that Schumacher would agree both to release Peerless from any present or future claims, and to withdraw any outstanding grievances. Minichello allegedly also stated that Schumacher wanted Peerless to attempt to persuade Butler, the truck driver, to withdraw the criminal complaint he had filed against Schumacher.

Peerless further alleges that Roberts then prepared an Agreement and Release (the "release"), which Peerless' in-house counsel Anthony Marsloe and a private investigator, John Wales, took to Central Booking, where Schumacher was then being held. After Butler, Marsloe and Wales met with an Assistant District Attorney, Butler withdrew his complaint. Peerless asserts that "immediately thereafter",[5] the Assistant District Attorney gave written authorization for Schumacher's release, Schumacher reviewed the release with O'Connor, signed it and was released.

In its complaint, Local One alleges that the release was signed by Schumacher under coercion and duress.[6] Even though the parties dispute the exact circumstances surrounding the release, the parties agree that Schumacher signed a release that stated, in pertinent part:

4. SCHUMACHER for himself and his heirs, legal representatives, estate and successors-in-interest, hereby release and forever discharges PEERLESS of and from any and all actions or causes of action, suits, debts, grievances, claims, complaints, contracts, controversies, agreements, promises, damages, claims for attorneys' fees, judgments, and demands whatsoever, in law or in equity, he ever had, now has or shall have as of the date of this Agreement and Release, including, but not limited to any grievances or complaints alleging violation of any collective bargaining or any other employment agreement.... [7]

On November 30, 1987, Minichello wrote to Peerless, "[r]e: Peerless Importers (discharge of John Schumacher)",[8] that Schumacher had rescinded the release and that, in any event, Local One's "position [was] that the release was uniquely personal and does not finalize Local One's dispute with Peerless...." [9]

On December 7, 1987, Local One submitted a formal Demand for Arbitration upon Peerless. On December 17, 1987, Peerless brought suit in New York State Supreme Court to stay the arbitration proceeding. Local One then removed the action to this Court.

## B. The Present Action

Local One now moves for summary judgment dismissing Peerless' petition and for an order compelling arbitration. Peerless cross-moves for summary judgment on its petition to stay the arbitration permanently and moves to deny Local One's motion for an order compelling arbitration. Peerless also moves for a declaratory judgment that the release signed by Schumacher is valid and enforceable.

4. Peerless' 3(g) at ¶ 6.

5. Peerless' 3(g) at ¶ 11.

6. Respondents' Reply Brief at 1.

7. Pet. Memorandum of Law at 5.

8. Peerless' Cross–Motion, Ex. 3.

9. *Id.*

Peerless argues that a stay of the arbitration is warranted on two grounds. First, Peerless contends that a stay is appropriate because no CBA was in effect at the time Schumacher was discharged and, therefore, no contractual arbitration clause existed under which to arbitrate the dispute. Second, Peerless contends that this Court should enter a stay since Schumacher and Peerless executed a release which relieved Peerless from all claims involving Schumacher's employment or discharge from employment. Peerless argues that the Court must consider any collateral or independent sources of a parties' agreement in determining whether a given dispute is arbitrable. Peerless urges that the release is such a collateral agreement and that any disputes relating to the release are for judicial determination.[10]

Local One asserts that only two issues are before the Court: first, whether an arbitration agreement existed at the time of the dispute and the discharge of Schumacher, and second, whether the particular dispute is referable to arbitration under such agreement. While conceding that Schumacher's discharge occurred when no CBA was in effect, Local One argues that Peerless refused to "reinstate" Schumacher, and that such refusal occurred after the new CBA took effect. Thus, Local One argues that an applicable arbitration clause existed at the time of the dispute.

## II. DISCUSSION

The Federal Rules authorize summary judgment where "there is no genuine issue as to any material fact ..." Fed.R.Civ.P. 56(c). A genuine dispute exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This Court's responsibility in deciding a summary judgment motion is "to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving

party." *Knight v. U.S. Fire Insurance,* 804 F.2d 9, 11 (2d Cir.1986). Applying this standard to the present case, the Court grants Local One's motion for summary judgment dismissing Peerless' application for a stay of arbitration.

### 1. Arbitration Under the Collective Bargaining Agreement

■ The Second Circuit recently summarized the principles applicable to a determination of whether a collective bargaining agreement creates a duty to arbitrate a specific dispute:

> Parties to a contract must submit a dispute to arbitration only when they have contracted to do so.... The determination of whether a collective bargaining agreement creates a duty to arbitrate a specific dispute is a matter to be resolved by a court, not the arbitrator, in the first instance ... We note however, that our scope of review is quite limited because, in determining whether a contract contains a clause requiring the parties to submit to arbitration, all doubts must be resolved in favor of arbitrability.... Indeed, unless it can be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," the dispute should be submitted to arbitration.

*Concourse Village v. Local 32E Service Employees International,* 822 F.2d 302, 304 (2d Cir.1987) (citations omitted). *See also Assoc. Brick Mason Contractors v. Harrington,* 820 F.2d 31, 35 (2d Cir.1987).

Moreover, in determining whether a dispute should be submitted to arbitration, a court must not rule on the potential merits of the underlying dispute. *A.T. & T. Technologies v. Communications Workers of America,* 475 U.S. 643, 645, 106 S.Ct. 1415, 1416, 89 L.Ed.2d 648 (1986). The Second Circuit in *Emery Air Freight Corp. v. Local 295 I.B.T.,* 786 F.2d 93, 96–97 (2d Cir. 1986) explained:

---

**10.** In its petition, Peerless also argues that Local One failed to follow time limits for grievance procedures established in the new CBA and that, consequently, arbitration is barred, pursuant to New York C.P.L.R. § 7502(b). Peerless, however, states that, for purposes of its cross-motion, it is not urging either of these arguments. Peerless' Memorandum in Opposition at 2.

The law has long been clear that where the parties have contracted to resolve their disputes by arbitration, a court asked to enforce that agreement should not weigh the merits of a claim that the agreement has been violated. The point has been driven home many times by the Supreme Court and by this court.... The parties have agreed that an arbitrator should determine the merits of such claims and it is national policy to encourage resolution of disputes between management and labor by such peaceful means. In this by now traditional analysis, a court should first examine the scope of the arbitration clause to see if it is the broad one generally in use governing "all disputes" as to the meaning, application or compliance with the collective bargaining agreement, or is a narrower version which may exclude particular subjects from arbitration....

While some words and phrases may indicate that a clause is narrow in scope, the tone of the clause as a whole may indicate otherwise. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59 (2d Cir.1983). Individual words or phrases thus are not given undue weight.

In the present case, the parties' collective bargaining agreement contains a broad arbitration clause providing, in pertinent part:

> If the matter cannot be resolved as set forth at Step 1 [or Step 3], any complaint, dispute or grievance *arising under this Agreement and during its term* involving questions of interpretation or application of any provisions of this Agreement ... shall be submitted ... to arbitration.

The claim which Local One seeks to arbitrate is, on its face, governed by the new collective bargaining agreement. Article 8 of the new CBA provides that "no nonprobationary employee shall be discharged without good or just cause,"[11] and Article 42 states that any complaint arising under the agreement involving questions of interpretation or application shall be submitted

to arbitration. These clauses are plainly applicable to the Schumacher dispute. Schumacher was allegedly discharged from employment for strike-related activity. He was not reinstated at the strike's conclusion. Whether the refusal to reinstate was for just cause is an arbitrable question.

Peerless argues, however, that Schumacher's discharge did not occur "during [the] term" of the new CBA and, therefore, that he cannot claim its protection. Peerless reasons that the dispute centers not upon a failure to *reinstate* Schumacher, but upon Schumacher's *discharge.*[12] This argument lacks merit. As noted by the Fifth Circuit in a similar case, "[t]he actual issue ... is whether in law [Schumacher] was still an employee at the time the new contract was signed. If so, the failure to reinstate him was a discharge under the new contract, and [Schumacher] was entitled to claim the 'just cause' provisions for discharge, as of that time." *Oil Chemical and Atomic Workers International Union Local No. 4-23 v. American Petrofina Co. of Texas*, 820 F.2d 747, 751 (5th Cir. 1987) (hereafter *OCAW*).

The facts in *OCAW* are strikingly similar to the case at bar. As in the present case, in *OCAW* an employee was discharged after his union's CBA expired and while a new CBA was being negotiated. The Fifth Circuit held that unless his discharge "was justified under the law, he was still an employee and subject to reinstatement and entitled to be treated as an employee by the company when the new contract was signed." *Id.* at 751. The court narrowed its holding, stating that "[t]he ... issue before the arbitrator will be whether [the employee] was an employee on the day the contract went into effect and whether there was just cause to discharge him at that time." *Id.* at 752.

This Court adopts the reasoning of the Fifth Circuit in *OCAW*. As that court stated: "there is a right guaranteed by the National Labor Relations Act—the right of an employee to reinstatement after a

---

**11.** Local One's Notice of Motion, Ex. A.

**12.** In support of its argument, Peerless points to Local One's own characterization of the dispute as one concerning Schumacher's discharge. Roberts Aff. ¶ 9, Ex. 1, 3.

strike. That right is ... not forfeited by the honest but mistaken belief of the employer that the employee has been guilty of strike misconduct ..." *OCAW*, 820 F.2d at 753 (quoting *NLRB v. Industrial Cotton Mills*, 208 F.2d 87, 92 (4th Cir.1953), *cert denied*, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954)).[13] Therefore, under the reasoning set forth in *OCAW*, this Court holds that Schumacher's discharge is fully cognizable under the arbitration clause set forth in the new collective bargaining agreement.

## 2. Effect of Agreement and Release

■ Peerless contends that this Court should determine whether the release signed by Schumacher was the product of coercion and duress and should decide the release's effect. The issue of agreement or release is an affirmative defense and, thus, must be decided by an arbitrator. As Judge Sweet of this Court noted in a similar case, "potential affirmative defenses or arguments on the merits which [the employer] might make in response to the [union's] claim must be raised before an arbitrator, and cannot be the basis for an injunction by this Court to stay arbitration proceedings." *Broadcast Arts v. Screen Actors Guild*, 673 F.Supp. 701, 707 (S.D.N.Y.1987).[14] This Court would be usurping the function of the arbitrator if it passed in any way upon either potential affirmative defenses or the merits of the present dispute. Therefore, the arbitrator—and not this Court—should consider whether the release signed by Schumacher was the product of coercion and duress and what effect should be given to the release.

■ This Court's decision rests alternatively on its conclusion that, contrary to Peerless' assertions, the release did not constitute a "collateral agreement" which rendered null the parties' arbitration agreement. A "collateral" agreement is a separate agreement connected with the principal contract which contains the arbitration clause. A party resisting arbitration bears the burden of demonstrating that a disputed issue is collateral. If a dispute arises under a collateral agreement, arbitration of that dispute cannot be compelled merely based upon the arbitration clause in the main agreement. *Rochdale Village v. Local No. 80, Intern. Broth. of Teamsters*, 605 F.2d 1290, 1296–97 (2d Cir.1979).[15]

Peerless' argument that the release constituted a supervening collateral agreement is misplaced for three reasons. First, the plain words of the release indicate that it is general in nature and is not a complete cancellation of the arbitration provision in the collective bargaining agreement. *See Schlaifer v. Sedlow*, 73 A.D.2d 552, 423 N.Y.S.2d 32 (N.Y.App.Div.1979).[16] Second, "subsequent acts or documents purporting or claimed to terminate an agreement containing a broad arbitration clause, if in

---

13. Peerless also argues that even if the dispute is arbitrable, "[s]o amorphous and ambulatory an issue as a failure to reinstate is not cognizable as a grievable dispute under the new CBA." Memorandum in Opp. at 20. This argument also is without merit. Schumacher, though discharged, might have continued to be an employee of Peerless under the National Labor Relations Act and "the failure to reinstate him was a discharge under the new contract." *OCAW*, 820 F.2d at 821.

14. *See also Local 370, Operating Engineers v. Morrison–Knudsen Co.*, 786 F.2d 1356 (9th Cir. 1986) (employer's defense of arbitration based on doctrines of waiver, equitable estoppel and mootness are to be determined by arbitrator); *Inner City Broadcasting Corp. v. American Federation of Television and Radio Artists*, 586 F.Supp. 556 (S.D.N.Y.1984) (motion to stay arbitration denied and motion to compel arbitration granted because employer's defense of waiver was to be raised before an arbitrator).

15. The court of appeals in *Rochdale* noted that if a dispute over contract termination was based on the theory that the contract had expired by its own terms, then the dispute was arbitrable because it required an interpretation of the contract's own terms. If, however, the contract had been terminated by a separate, collateral agreement, the dispute concerning termination would not be arbitrable because it could not reasonably be classified as an issue arising "under" the original contract.

16. In *Schlaifer*, the court made an important distinction between a general release of claims form and an instrument of cancellation. The plaintiff in *Schlaifer* had signed "a boiler plate general release, releasing all claims from the beginning of the world to the date of the release" with no mention of any prior agreements. Plaintiff later sought arbitration under the prior agreements for a percentage of corporate profits and stock. In response to the corporation's claims that such arbitration should be barred, the court held that:

dispute, raise issues for the arbitrators and not for the court." *Id.* 423 N.Y.S.2d at 34. This Court has found that in the present case there is a valid, broad arbitration agreement, providing for arbitration of "any dispute." It follows that the issue of the validity of the release and the issue of coercion are encompassed by the arbitration agreement and, thus, are matters for the arbitrator. *See Matter of Weinrott*, 32 N.Y.2d 190, 344 N.Y.S.2d 848, 298 N.E.2d 42 (1973) (issues of coercion or fraud in its inducement are for arbitrator).

Third, an important difference exists between a dispute arising solely under a collateral agreement and a dispute arising under the main agreement but requiring determination of a sub-issue. The latter is "inextricably tied up with the merits of the underlying dispute, and is arbitrable." *Prudential Lines v. Exxon Corp.*, 704 F.2d 59, 64–65 (2nd Cir.1983) (quoting *McAllister Bros., Inc. v. A & S Transportation Co.*, 621 F.2d 519, 523 (2nd Cir.1980)).[17] The underlying dispute in the present case concerns Schumacher's discharge and Peerless' subsequent failure to reinstate Schumacher. Whether Schumacher was justly discharged bears upon the factual circumstances under which Schumacher signed the release and thus is pertinent to the issue of coercion and duress. Thus, the validity of the release is a sub-issue tied to the underlying dispute and, accordingly, is a matter for the arbitrator.

It follows that the Court cannot grant Peerless' motion for declaratory judgment on the validity and effect of the release. This Court must "assiduously avoid usurping the functions of the arbitrator by deciding the merits of a grievance in the guise of determining the scope of the agreement to arbitrate." *United Steelworkers Of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Peerless cannot avoid its obligation to arbitrate by bringing an anticipatory action for declaratory judgment. *See Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976).[18] It is the arbitrator's construction of the contract the parties have bargained for, not the court's. Thus, Peerless' motion for declaratory judgment is denied.

### III. CONCLUSION

For the reasons stated above, this Court grants Local One's motion to compel arbitration and for summary judgment dismissing Peerless' motion to stay arbitration. All issues surrounding the non-reinstatement of Schumacher are properly arbitrable including the effect, if any, of the release signed by Schumacher.

SO ORDERED.

---

[u]nlike a cancellation, however, it falls short of a complete nullification of every provision of the prior agreement both substantive and procedural. Thus, in the absence of express provision to the contrary, where the differences between the parties relate only to the substantive terms of their agreement, they will be held in releasing claims to have dealt only with such substantive rights and obligations, not with the separate and distinct subject of choice of the arbitration forum for the resolution of disputes.

423 N.Y.S.2d at 34.

**17.** In *Prudential Lines,* the main issue before the court was whether the district court erred in compelling arbitration between Prudential and Exxon to determine the parties' responsibilities for repairing a vessel. Resolution of the dispute, the court held, necessarily implicated resolution of what the court declared to be several sub-issues, including whether Prudential's claim for damages was extinguished by certain provisions in the agreement, whether Prudential' sur-

veyor was authorized to "accept" the return of the vessel, and what acts would constitute an "acceptance" of the vessel. The appellate court held that the district court was correct in concluding that each of these issues is a sub-issue, "inextricably tied up with the merits of the underlying dispute," and "wholly derivative of issues that fall within the scope of the arbitration clause, and therefore ... within the scope of the arbitration clauses of the charter party." 704 F.2d at 64–65.

**18.** Violations of collective bargaining agreements should not even be preliminarily enjoined pending the arbitrator's decision on the merits because "this would involve the court in hearings, findings and interpretations of the agreement in derogation of the arbitrator's task to decide the dispute." *N.Y.S. Ass'n For Retarded Children v. Carey,* 456 F.Supp. 85, 96 (E.D.N.Y.1978).