**PEERLESS IMPORTERS, INC.,**
Petitioner–Appellant,

v.

**WINE, LIQUOR & DISTILLERY WORKERS UNION LOCAL ONE,** Respondent–Appellee,

**John Schumacher, Intervenor.**

**No. 509, Docket 89–7485.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 5, 1990.

Decided May 21, 1990.

Carter K. Combe (Allen B. Roberts, Roberts & Finger, New York City, on the brief), for petitioner-appellant.

J. Warren Mangan, (Victor Feingold, New Rochelle, N.Y., O'Connor & Mangan, Long Island City, N.Y., on the brief), for respondent-appellee and intervenor.

Before NEWMAN and ALTIMARI, Circuit Judges, and CONBOY, District Judge.*

* The Honorable Kenneth Conboy of the District Court for the Southern District of New York, sitting by designation.

JON O. NEWMAN, Circuit Judge:

This appeal concerns two issues: (1) whether a new collective bargaining agreement providing for arbitration applies to a claim for reinstatement by an employee discharged prior to the new agreement, and (2) whether a court or an arbitrator should determine the validity of the settlement of a labor dispute where the parties' agreement to arbitrate covers only that one dispute. Peerless Importers, Inc. ("Peerless") appeals from the April 21, 1989, order of the District Court for the Southern District of New York (John M. Walker, Jr., Judge) compelling arbitration of its dispute with Wine, Liquor & Distillery Workers Union Local One ("Local One"). We reverse.

## Background

Peerless is a wholesale importer and distributor of wines and liquors. Local One represents the warehouse, clerical, and mechanical employees of Peerless at its facility in Brooklyn, New York. Peerless and Local One were parties to a collective bargaining agreement that expired on October 31, 1987. When the parties were unable to reach a new agreement, Local One began an economic strike and picketing at the Peerless facility, forcing Peerless temporarily to cease its operations.

On November 10, Peerless attempted to resume limited operations with replacement workers. That day a replacement delivery truck driver, Laurance Butler, reported to the New York City Police Department that a group of five striking employees accosted him while he was parked in a Peerless truck off the Brooklyn–Queens Expressway. Butler later identified from a photograph John Schumacher, a Peerless employee, as the striker who forced open the door of the truck and stole delivery invoices. On November 13, Peerless announced the dismissal of Schumacher, effective November 10, for this misconduct. Peerless also disclosed that Butler had filed criminal charges against Schumacher. Local One challenged the discharge. At a November

13 negotiating session, Peerless and Local One orally agreed to submit the Schumacher dispute to expedited arbitration before George Sabatella, the chairman of the New York State Mediation Board. That day the parties also agreed to a new collective bargaining agreement. The membership of Local One ratified the agreement on November 15, and Peerless reinstated the striking workers the following day.

On the evening of November 16, 1987, two New York City policemen visited Schumacher at his home and instructed him to appear at the 90th Precinct the next morning. Neither party supplies any details as to the specific charges brought against Schumacher or even whether the police had arrested Schumacher or had asked him to surrender voluntarily. On November 17, Schumacher arrived at the precinct with Kenneth O'Connor, an attorney who represented another union in its contract negotiations with Peerless. Two detectives informed Schumacher of Butler's criminal complaint and his subsequent identification of Schumacher. The detectives gave Schumacher the option of standing in a line-up and offered to drop the charges in the event Butler could not identify him as the employee who stole the invoices. Schumacher refused this option. Instead, he asked O'Connor to arrange a deal with Peerless to settle the claim of wrongful discharge and to end his confinement. At the request of O'Connor, officials of both Local One and Peerless quickly negotiated a settlement. Nino Magliocco, the president of Peerless, agreed to persuade Butler to drop the criminal charges if Schumacher would resign his employment and withdraw all grievances against the company. Schumacher accepted Magliocco's offer, and both he and O'Connor signed an agreement releasing all claims against Peerless.

Within days Schumacher sought to revoke the release. On November 20, he sent a letter to Frank Maccia, head of corporate operations for Peerless, stating his belief that he was not bound by the release agreement because Peerless had coerced him into signing it. On November 30, Frank Minichello, the vice-president of Local One, informed Maccia that the union also did not consider itself bound by the release agreement. Minichello observed that Schumacher had rescinded the agreement and argued that, in any event, the release was "uniquely personal" and therefore did not affect the specific agreement between Peerless and Local One to arbitrate Schumacher's dismissal. On December 7, Local One filed a complaint with the National Labor Relations Board, alleging that Peerless had engaged in an unfair labor practice in dismissing Schumacher.

The NLRB charged Peerless with violating sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3) (1982). Peerless defended on two grounds: that Schumacher had threatened Butler and had stolen invoices from his truck, and that Local One had already obtained a settlement of the dispute whereby Butler withdrew the criminal charges in exchange for Schumacher's resignation. The Administrative Law Judge ("ALJ") rejected both defenses. The ALJ noted that while Butler in good faith had identified Schumacher as the perpetrator of the strike misconduct, giving Peerless legitimate grounds on which to discharge Schumacher, the identification had been mistaken. The ALJ also refused to defer to the settlement because Schumacher, as an employee, did not have the authority to waive Local One's right to file an unfair labor practice charge and because Peerless had "coerced" Schumacher into signing the release agreement. As affirmative relief, the ALJ ordered Peerless to offer Schumacher immediate reinstatement and to expunge from its files any references to his termination. The NLRB adopted the ALJ's recommended order. Noting the apparent conflict in Butler's testimony concerning the sequence of events on the day Schumacher allegedly stole the invoices, the Board affirmed the ALJ's decision to discredit Butler's testimony and to void the release because of coercion. Consequently, the Board found it unnecessary to determine whether Schumacher waived Local One's right to file charges with the Board. We have today affirmed the Board's ruling in an unpublished opinion. *Peerless Im-*

porters, Inc. v. NLRB, No. 89–4121 (2d Cir. May 21, 1990).

On the same day that it filed an unfair labor practice complaint with the Board, Local One submitted a formal demand upon Peerless to arbitrate the Schumacher dispute. Peerless then brought suit in New York State Supreme Court for a stay of the arbitration proceeding and a declaration that the release agreement was valid. Local One removed the proceeding to federal district court where both parties moved for summary judgment. The District Court granted summary judgment for Local One and ordered arbitration after concluding that the arbitration clause in the new collective bargaining agreement covered the controversy surrounding Schumacher's discharge. *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 712 F.Supp. 346 (S.D.N.Y.1989). The District Court rejected Peerless' claim that the dismissal was not arbitrable because it had occurred prior to the ratification of the new collective bargaining agreement. Following the reasoning of a Fifth Circuit opinion, *Oil, Chemical and Atomic Workers International Union Local No. 4–23 v. American Petrofina Co. of Texas*, 820 F.2d 747 (5th Cir.1987) ("*OCAW*"), the District Court held that the pertinent issue was not whether Peerless had valid grounds on which to dismiss Schumacher, but whether Peerless had just cause to deny him reinstatement. The latter issue, the Court believed, was governed by the arbitration clause in the new contract. The Court further held that the validity of the release was an affirmative defense to be raised before the arbitrator.

### Discussion

1. The threshold inquiry in this case is whether the dispute relating to Schumacher's discharge falls within the scope of the arbitration clause of the new collective bargaining agreement.

■ Because the duty to arbitrate is of contractual origin, " 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Com-*munications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)). As a general matter, the determination of whether an arbitration clause in a collective bargaining agreement applies to a specific dispute is a matter for the court. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. at 649, 106 S.Ct. at 1418; *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. Where the arbitration clause is broad, we have directed courts to compel arbitration whenever a party has asserted a claim, however frivolous, that on its face is governed by the contract. *See Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir.1987). Where the arbitration clause is narrow, a different rule of construction applies. In those instances, we have permitted courts greater latitude in determining whether the dispute falls within the purview of the clause. *See McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 522 (2d Cir.1980); *Rochdale Village, Inc. v. Local No. 80, Public Service Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979).

■ Mindful that the arbitration clause in this case is not of unlimited scope but is restricted to disputes "arising under this Agreement and during its term," Local One nevertheless maintains that the new contract governs its dispute with Peerless. That dispute, Local One contends, is not whether Peerless lawfully dismissed Schumacher on November 13, but whether the company had a right not to reinstate him on November 16, the date the new agreement first became effective. In support of its position, Local One invokes the Fifth Circuit's opinion in *OCAW*, a case where an employee, discharged for strike misconduct, sought reinstatement under a new collective bargaining agreement. Because the new contract in *OCAW* was subject to all "applicable laws, orders, and rules," the

Fifth Circuit held that the agreement incorporated the right to reinstatement established by the National Labor Relations Act. *OCAW*, 820 F.2d at 752. Accordingly, the Court determined that the issue of whether the company's failure to reinstate the discharged employee at the conclusion of the strike constituted a breach of the agreement was arbitrable. *Id.* at 753. Invoking *OCAW*, Local One asserts that the denial of reinstatement to Schumacher, in the absence of strike misconduct, gave rise to a cognizable claim under the new agreement's arbitration clause.

■ While this analysis has a surface appeal, we are not persuaded by the Fifth Circuit's reasoning. In the pending case, Peerless is not questioning its statutory duty to reinstate striking employees; rather, it is contending that Schumacher was validly discharged at a time when no collective bargaining agreement was in force and that the agreement the parties subsequently negotiated did not accord rights to employees involved in disputes that occurred during the strike. The District Court thought Article VIII of the new agreement afforded Schumacher contractual grounds on which to contest his discharge, but that provision states only that "no non-probationary *employee* shall be discharged without good or just cause" (emphasis added). If Schumacher was validly discharged on November 10, he was not an "employee" on November 16, when the collective bargaining agreement became effective and reinstatement was refused. To compel arbitration on the basis of this provision would permit any former employee, no matter how long ago dismissed, to demand "reinstatement" under the term of a new collective bargaining agreement and obtain arbitration of the reinstatement "dispute." Though an arbitration clause may reach forward to require arbitration of a dispute arising under a collective bargaining agreement, even though the agreement has expired, *see Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977), the arbitration clause of a new agreement may not be used to reach back to cover disputes arising before the agreement was executed, unless such preexisting disputes are brought within the scope of the clause. We do not believe the arbitration clause of the new agreement is "susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. at 582–83, 80 S.Ct. at 1353.

2. As support for its formal demand of arbitration, Local One also invoked the parties' November 13, 1987, oral agreement to arbitrate Schumacher's dispute before the New York State Mediation Board. After construing the arbitration clause in the new contract to apply to Schumacher's dismissal, the Court declined to ascertain whether the oral agreement also obliged Peerless to arbitrate. Neither party contests the existence of the oral agreement. Rather, the parties dispute the validity of a subsequent settlement that purportedly canceled this agreement.

Before the District Court, Peerless argued that the oral agreement, like the new collective bargaining agreement, did not provide a basis for arbitration because Local One subsequently entered a release agreement withdrawing all claims arising from Schumacher's discharge. Local One contested the validity of the release agreement, claiming that Schumacher signed the release under coercive conditions, and argued that, in any event, Peerless could assert the existence of a release only as an affirmative defense at an arbitration hearing. The District Court agreed with Local One. First, the Court held that because the existence of a valid release would serve as an affirmative defense to Local One's unlawful discharge claim, the matter was properly reserved for the arbitrator. *See, e.g., Local Union No. 370, International Union of Operating Engineers v. Morrison–Knudsen Co.,* 786 F.2d 1356, 1358 (9th Cir.1986) (potential affirmative defenses based on the doctrines of equitable estoppel, waiver, or mootness are subject to arbitration). Next, the Court ruled that the release was not a collateral agreement but was "inextricably tied up with the merits of the underlying dispute." 712 F.Supp.

at 352 (citing *McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d at 523). We disagree with both grounds for the District Court's decision.

■ The District Court remitted Peerless to arbitration on the assumption that the arbitration clause of the collective bargaining agreement encompassed Schumacher's discharge grievance. However, since we have concluded that the arbitration clause of that agreement does not cover Schumacher's dismissal, the only possible basis for arbitration of that dispute is the oral agreement between the parties. Unlike the arbitration clause in the new contract, the oral agreement to arbitrate is of an irreducibly narrow scope: It provides for arbitration solely of Schumacher's claim against Peerless. In this context, the release agreement, under which "Schumacher agree[d] to withdraw with prejudice and in writing the grievance now pending before the New York State Mediation Board," amounts to more than a potential affirmative defense. By attempting to withdraw the sole claim the parties agreed to submit to arbitration, the release, if valid, would also constitute a complete cancellation of the oral arbitration agreement.

■ Though the arbitrator should determine any claim of contract termination under a broad arbitration clause, *see Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. at 254, 97 S.Ct. at 1073, we have recognized that where an agreement is narrow, a court has greater leeway in determining whether the parties ended an agreement to arbitrate, *see McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d at 522; *Rochdale Village, Inc. v. Local No. 80, Public Service Employees Union*, 605 F.2d at 1296. In *Rochdale*, we held that if a collective bargaining agreement made no provision for altering its duration or for amending its terms, questions as to whether the parties had a subsequent agreement that sought to terminate the arbitration clause would not "arise" under the collective bargaining agreement, and the enforceability of the latter agreement, as a collateral issue, would be properly sub-

mitted to the court. *Id.* at 1296–97. *Rochdale* recognized that parties who have agreed to arbitrate retain the authority to make collateral agreements not to arbitrate and that the construction of such agreements is for a court, not an arbitrator. Where an agreement to arbitrate concerns disputes arising in the course of an ongoing relationship, a settlement of a single dispute does not terminate the agreement to arbitrate, and the validity of such a settlement is properly a matter for the arbitrator to consider as an affirmative defense to the grievance. But where, as here, the agreement to arbitrate concerns only a single dispute, it is unrealistic to expect that parties settling that dispute will recite not only that the dispute is settled but also that they have made a new agreement not to arbitrate; in these circumstances, the agreement to settle the dispute is fairly viewed as an agreement not to arbitrate the dispute. The validity of that agreement, as in *Rochdale*, is an issue for the court.

Nor do we agree with the District Court that the validity of the release was a sub-issue of the dispute concerning Schumacher's dismissal. 712 F.Supp. at 352; *see Prudential Lines, Inc. v. Exxon Corporation*, 704 F.2d 59, 64 (2d Cir.1983); *McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d at 523. None of the factors Local One enlists in support of its claim of coercion bears on the validity of Schumacher's discharge. Local One asserts that Schumacher signed the release under duress because he feared that Butler would mistakenly identify him in a lineup, raising the possibility that he would have to spend time in jail. The union recounts that Schumacher could not afford this risk because he suffered from a medical condition, his wife was in the hospital, and his teen-age son was left unattended at home. Though it is unclear whether these factors constitute coercive conditions, this issue is separate from whether Peerless had just cause to dismiss Schumacher. Because the validity of the release can be determined without reference to the lawfulness of the discharge, we conclude that the validity of the release was a collateral issue to the

discharge grievance. *See Rochdale Village, Inc. v. Local No. 80, Public Service Employees Union*, 605 F.2d at 1297.

The order of the District Court compelling arbitration is reversed. We remand to the District Court to decide the validity of the release and to determine what preclusive effect, if any, to accord the Board's ruling that Schumacher signed the release agreement under coercive conditions. On that issue, we note that the Board did not need to find that conditions were coercive and that the release agreement was invalid in order to proceed with an unfair labor practice charge and to direct that Peerless reinstate Schumacher. Because Local One, even after the Board's ruling, continues to demand arbitration over the issue of back pay, the District Court must decide the validity of the release agreement and whether the parties cancelled the oral agreement to arbitrate. Of course the parties may yet settle the back pay issue now that the Board's unfair labor practice determination has been upheld.

Reversed and remanded.