23 F.3d 1039
 146 L.R.R.M. (BNA) 2274, 128 Lab.Cas. P 11,094
 GENERAL DRIVERS, SALESMEN AND WAREHOUSEMEN'S LOCAL UNION NO.
984, an Affiliate of the International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and Helpers of America,
AFL-CIO, Plaintiff-Appellee,
v.
MALONE & HYDE, INC., Defendant-Appellant.
 No. 92-6505.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 30, 1993.
Decided May 11, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied June
23, 1994.*
 
 Howard R. Paul (argued & briefed), Memphis, TN, for plaintiff-appellee.
 David P. Jaqua (argued & briefed), Kullman, Inma, Bee, Downing & Banta, Memphis, TN, for defendant-appellant.
 Before: BOGGS and SILER, Circuit Judges; and CHURCHILL, Senior District Judge.*
 SILER, Circuit Judge, entered the opinion of the court, in which BOGGS, Circuit Judge, joined. CHURCHILL, Senior District Judge (p. 1046), delivered a separate opinion concurring in part and dissenting in part.
 SILER, Circuit Judge.
 
 
 1
 This case arises from an employment dispute involving Richard Mack, his former employer, Malone & Hyde, Inc. ("Malone & Hyde" or "the Employer"), and Mack's union. Defendant, Malone & Hyde, appeals the decision of the district court leaving questions of abandonment, withdrawal, estoppel, and waiver to be resolved by arbitration, should the parties proceed to arbitration.
 
 
 2
 For the reasons stated below, we affirm the decision of the district court.
 
 I.
 
 3
 On January 28, 1988, Malone & Hyde issued a notice of discipline to Richard Mack, placing him on a two-week suspension. Mack was a member of the bargaining unit exclusively represented by Plaintiff, General Drivers, Salesmen, and Warehousemen's Local Union No. 984 ("the Union"). On February 29, 1988, Mack received an employee disciplinary notice terminating his employment. On both occasions, Mack signed a record of grievance, which the Union submitted as a grievance to the Employer. At the time of Mack's grievances, the Employer and the Union were parties to a collective bargaining agreement ("CBA"). The CBA in effect at the time of Mack's grievances expired on January 8, 1989, and a subsequent agreement expired on January 8, 1992. In November 1991, the Employer withdrew recognition of the Union. The Union subsequently filed a petition seeking an election. The Union lost the election in May 1992.
 
 
 4
 Article XIII of the CBA sets out the procedures for filing and resolving grievances. Article XIII provides for arbitration where the representatives of the Employer and the Union cannot reach a settlement. The Union and the Employer processed Mack's grievances according to the CBA up to arbitration but were unable to resolve the grievances at any of the pre-arbitration phases.
 
 
 5
 The Union requested that Mack's grievances be arbitrated. However, Mack did not want the designated Union agent representing him at the arbitration and requested that he be represented by an attorney. The Union denied Mack's request for an attorney but did assign a different Union agent, Arthur B. Crutcher, Vice President of the local Union, to represent Mack.
 
 
 6
 In August 1988, Kim G. Sims, an attorney, notified the Union that she represented Mack with regard to his arbitration hearing. On September 9, 1988, Sims again notified the Union that she represented Mack and asked to be included in the selection of the arbitrator. Crutcher subsequently received a letter from Mack on October 12, 1988, notifying him that Mack had hired Sims to represent him in the arbitration and requesting that the Union forward to Sims all information regarding his case. In response to Mack's letter, Crutcher wrote Mack, stating in part:
 
 
 7
 Since you have made this request that Ms. Sims present your case, we are requesting specifically if you are disbarring the Local Union from presenting your cases and will only use officials of the Local Union as witnesses to testify.
 
 
 8
 We therefore ask that you sign this letter releasing the Local Union of all of its duties, requirements and obligations under the terms and provisions of the present contract with Malone and Hyde Company.
 
 
 9
 At the bottom of Crutcher's letter to Mack, the following release language appeared:
 
 
 10
 I, Richard Mack, do hereby release Teamsters Local Union No. 984 of all of its duties, requirements and obligations under the terms and provisions of the present contract with Malone & Hyde Company concerning my cases.
 
 
 11
 Mack signed the release on November 16, 1988. In late November, John Lane, Malone & Hyde's operations manager, received a call from Crutcher advising him that Mack had retained outside counsel and that the Union was "out of it."
 
 
 12
 In July 1988, the American Arbitration Association ("AAA") had furnished panels of arbitrators to the representatives of the Union and the Employer, who each selected separate arbitrators to hear the grievances. The AAA sent letters dated October 14, 1988, to the Union and the Employer acknowledging their selections of arbitrators. In late October and early November 1988, the AAA notified representatives of the Union and the Employer of dates the arbitrators would be available to hear Mack's grievances. Receiving no response, the AAA wrote the Union and the Employer in early December requesting information as to the current status of Mack's grievances. In order to respond to the AAA's request, John Lane of Malone & Hyde wrote the Union on December 23, 1988, seeking clarification of the status of Mack's grievances:
 
 
 13
 You informed me recently that Teamsters Local Union No. 984 will not pursue [Richard Mack's] arbitration cases. Since that time, the American Arbitration Association, by letters dated December 6, 1988, has requested that we advise them of the status of the cases. In order that we may respond definitely to the AAA and close out these cases, please confirm below that the union will not pursue these cases further. Also, Malone & Hyde needs assurance that these cases will not be reinstituted by the Union and that all disputes and controversies between Malone & Hyde, Inc. and Teamsters Local Union No. 984 concerning the employment and termination of employment of Richard Mack are concluded.
 
 
 14
 Mack subsequently filed an unfair labor practice charge against the Union with the National Labor Relations Board ("N.L.R.B.") alleging bad faith on the part of the Union in representing him. On January 12, 1989, about two weeks after Mack filed his N.L.R.B. charge, Howard Paul, the Union's attorney, wrote the Employer stating that
 
 
 15
 [n]o action of [the Union] is to be construed as an abandonment of Mr. Mack's grievances. Neither should they be construed as acknowledging that the grievance has no merit.
 
 
 16
 On the contrary, Mr. Mack desires to proceed to arbitration. He simply did not want a Union business agent representing him at the hearing. He has relieved the Union of any further obligations in the processing of his grievances and has retained an attorney, Ms. Kim G. Sims[.]
 
 
 17
 On January 23, 1989, Sims wrote to Malone & Hyde to inquire about the grievance hearing. The Employer's attorney responded on February 2, 1989, asserting that
 
 
 18
 [e]mployees have no individual right to arbitrate under the union contract. Only the union and the company have such a right. Moreover the company has no obligation to deal with any representative of Mr. Mack except the union, which by law is the representative of employees covered by the collective bargaining agreement. Therefore, the company declines to deal with you as a representative of Mr. Mack.
 
 
 19
 On February 2, 1989, Malone & Hyde also wrote the AAA stating that, based on the Union's notification that Mack did not wish for the Union to represent him with respect to his grievances and Malone & Hyde's understanding that the "union ha[d] been relieved of any further obligation to process [Mack's] grievances," Malone & Hyde was "relieved of any obligation to proceed further in these cases."
 
 
 20
 On February 7, 1989, the AAA notified the Union and the Employer that the AAA would consider the matter closed unless there was an objection by February 14, 1989. Having received no objections by February 20, 1989, the AAA wrote the Union and the Employer on that date stating that the AAA considered the matter withdrawn. On April 5, 1989, the Union's attorney wrote the AAA stating that he did not receive a copy of the February 20, 1989, letter and that he only became aware of that letter on March 25, 1989. The Union's attorney went on to state that the matter involving Mack's grievances
 
 
 21
 ha[d] not been withdrawn and should proceed to arbitration. The grievant desires to have his own attorney process this grievance and the grievant and the Union have agreed. The company has declined to arbitrate with the grievant's personal attorney.
 
 
 22
 The AAA then requested comments from Malone & Hyde regarding the Union attorney's letter. Responding through its attorney, Malone & Hyde claimed that it had no obligation to arbitrate Mack's grievances.
 
 
 23
 On May 12, 1989, the Union filed suit against the Employer under 29 U.S.C. Sec. 185 alleging that the Employer's refusal to arbitrate Mack's grievances violated the collective bargaining agreement. The Union requested the court to either compel the Employer to arbitrate or decide the merits of Mack's grievances. On October 8, 1991, the district court denied the Union's motion for summary judgment; the court concluded that an employer has no duty to arbitrate a grievance with an individual employee and his personal attorney but found that an issue of fact existed as to whether the Union still represented Mack and whether the release signed by Mack constituted a formal rejection of union representation.
 
 
 24
 A hearing was held on April 20, 1992, and on April 21, 1992, the district judge issued his decision from the bench. The judge dismissed the Union's complaint, deciding that Malone & Hyde acted properly in refusing to arbitrate with Mack or his attorney; the court held that Malone & Hyde "cannot be compelled to arbitrate with Mr. Mack or his attorney, either on their own or in conjunction with the Union's passive presentation of the grievances[.]" The district court found that the Union was not entitled to choose to allow Mack to participate with his own attorney. The court reasoned that, because Mack was not a party to the collective bargaining agreement, he could not be a party to the arbitration, and any further processing of Mack's grievances must be carried out by the Union "with the permission of Mr. Mack without delegation of that function to Mr. Mack or his attorney." Finally, the district court determined that questions as to whether the Union withdrew from or abandoned the arbitration, whether the arbitration was time-barred,[1] and whether the employer had asserted valid equitable defenses are to be determined by the arbitrator.
 
 II.
 
 25
 While the Union does not explicitly challenge the district court's decision that the Employer is obligated to arbitrate only with the Union, we will address the issue briefly.
 
 
 26
 The district court, in denying the Union's request to compel the Employer to arbitrate with the individual employee and his privately retained counsel, looked to this court's decision in Malone v. United States Postal Service, 526 F.2d 1099 (6th Cir.1975). Malone held that, in the absence of language in a CBA guaranteeing an employee the right to be represented in grievance and arbitration proceedings by someone other than the exclusive bargaining representative, an employer has no obligation to deal with an individual employee or any representative of the employee other than the exclusive bargaining representative. Id. at 1101. In the present case, the grievance and arbitration procedures set out in the CBA refer only to representatives of the union and the employer; nowhere is it stated that an individual employee can be party to either the CBA or an arbitration proceeding conducted pursuant to the CBA. Accordingly, the district court properly found that Malone & Hyde had no obligation to arbitrate directly with either Mack or his attorney.
 
 III.
 
 27
 Malone & Hyde contends that the release signed by Mack, the turning over of Mack's grievances to Mack and his attorney, the Union's loss of representative status, and the termination of the CBA relieve Malone & Hyde of any obligation to arbitrate Mack's grievances with the Union.
 
 
 28
 National labor policy favors arbitration, and where the parties to a collective bargaining agreement have agreed to submit to arbitration, United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"), and the agreement, accordingly, contains an arbitration clause, there is a presumption of arbitrability. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). This presumption can be overcome only if " 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " Id. (quoting Steelworkers v. Warrior & Gulf, 363 U.S. at 582-83, 80 S.Ct. at 1353). The presumption favoring arbitration is based on a policy recognizing arbitration as a "substitute for industrial strife," Steelworkers v. Warrior & Gulf, 363 U.S. at 578, 80 S.Ct. at 1351, and on the belief that arbitrators, more so than the courts, possess the proper experience and expertise to resolve labor disputes, Litton Financial Printing Div'n v. NLRB, 501 U.S. 190, ----, 111 S.Ct. 2215, 2229, 115 L.Ed.2d 177 (1991) (Marshall, J., dissenting).
 
 
 29
 In the realm of industrial relations, it is not for the courts to weigh the merits of a grievance or to undertake to determine the rights of parties under a collective bargaining agreement, AT & T Technologies, 475 U.S. at 649, 106 S.Ct. at 1418; a court's role is limited to deciding if "the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).
 
 A.
 
 30
 The district court made no finding as to the legal effect of the November 16, 1988, release signed by Mack, finding that the issue was procedural and, therefore, leaving the issue for arbitration. Malone & Hyde argues that construction of the release is properly the responsibility of a court as the agreement is collateral to the CBA. Malone & Hyde contends that the release, as a matter of law, relieved the Union of any obligation to process Mack's grievances. In Malone & Hyde's view, once the Union was released from its obligation to arbitrate, Malone & Hyde, as the other party to the CBA, was likewise released from any further duty to arbitrate. The Union contends that the district court properly left the question of interpreting the release to the arbitrator, arguing that the only purpose of the release was to protect the Union should Mack later sue the Union. The Union further asserts that it "remains willing to go forward" with the processing of Mack's grievances.
 
 
 31
 Article XIII of the CBA contains a broad arbitration clause covering "any discharge, suspension, or dispute or controversy of any kind over the application of this Agreement." (Emphasis added). Such language is typical of broad arbitration clauses, see Brotherhood of Teamsters and Auto Truck Drivers, Local No. 70 v. Interstate Distributor Co., 832 F.2d 507, 510 n. 2 (9th Cir.1987), and strengthens the presumption favoring arbitrability, AT & T Technologies, 475 U.S. at 650, 106 S.Ct. at 1419. See also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964).
 
 
 32
 The Employer posits that construction of Mack's signed release is properly the responsibility of a court as the agreement is collateral to the CBA. The Employer reasons that, because the release is collateral to the CBA, interpretation of the release does not depend on interpreting the CBA itself. However, this circuit has held that interpretation of a settlement agreement separate from an existing CBA is an issue properly left for arbitration. Amalgamated Clothing Workers v. Ironall Factories Co., 386 F.2d 586 (6th Cir.1967).
 
 
 33
 Amalgamated Clothing Workers involved a separately negotiated settlement between the employer and the union settling particular grievances of specified individual employees. Id. at 588. The employer in Amalgamated Clothing Workers argued that the settlement resolved a broader array of disputes than the issues specifically set out. Id. at 590. Noting that the parties had agreed to submit to arbitration "any complaint ... or dispute arising out of or relating to provisions of this Agreement, or the interpretation ... thereof," id. (quotation omitted), this court determined that construction of the settlement agreement "concern[ed] the correct interpretation to be accorded to the collective bargaining agreements between union and management" and was, consequently, a properly arbitrable issue, id.
 
 
 34
 Whether or not the release signed by Mack constitutes a "collateral agreement," we find that construction of the release involves a question of the application of the CBA and is properly left for arbitration.[2] Similarly, Malone & Hyde's claim that it was no longer required to submit to arbitration by virtue of the Union's turning over of Mack's grievances to Mack and his attorney, the Union's loss of representative status, and the termination of the CBA raises issues involving interpretation of various provisions of the CBA. Therefore, resolution of this claim falls within the arbitrator's jurisdiction.[3]B.
 
 
 35
 Malone & Hyde contends that the district court should have determined, as a matter of law, whether the Union can require Malone & Hyde to arbitrate instead of leaving the matter to arbitration. Malone & Hyde notes language in the CBA stating that "[n]o rights or obligations created by or arising out of [the CBA] shall extend beyond its termination." Malone & Hyde argues that this provision, in light of the Union's loss of representative status and the termination of the CBA, means that the arbitrator no longer has jurisdiction over the matter.
 
 
 36
 As discussed above, these claims require examining the terms of the CBA itself and are, therefore, arbitrable. Furthermore, we note that the Supreme Court has recognized that a party's obligation to arbitrate does not automatically cease upon termination of the collective bargaining agreement. Nolde Brothers, Inc. v. Bakery & Confectionery Workers Union, Local No. 358, 430 U.S. 243, 252, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300 (1977); International Brotherhood of Teamsters, Local No. 1199 v. Pepsi-Cola General Bottlers, Inc., 958 F.2d 1331, 1333 (6th Cir.1992). The presumption that disputes arising under a collective bargaining agreement are arbitrable remains even after the CBA itself has terminated. Litton Financial Printing, 501 U.S. at ----, 111 S.Ct. at 2225 (explaining Nolde Brothers, 430 U.S. 243, 97 S.Ct. 1067).
 
 
 37
 A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.
 
 
 38
 Id. Applying this definition, Mack's grievances are clearly entitled to the presumption of arbitrability.
 
 
 39
 Malone & Hyde argues that the Court's decision in Nolde Brothers supports its contention that, as a matter of law, it is no longer bound by the arbitration clause. Malone & Hyde points out that the Court specifically stated that the parties to a collective bargaining agreement can expressly or by clear implication provide for arbitration obligations to cease upon termination of the CBA. Nolde Brothers, 430 U.S. at 255, 97 S.Ct. at 1074. Malone & Hyde contends that, because the CBA itself provides that "[n]o rights or obligations created by or arising out of this Agreement shall extend beyond its termination," the parties have expressly negated any inference that the arbitration clause survives the contract's termination.
 
 
 40
 We find this argument unpersuasive. First, Nolde Brothers, 430 U.S. at 244, 97 S.Ct. at 1068, recognized the arbitrability of a dispute that actually arose after the collective bargaining agreement had terminated.[4] In contrast, the disputes underlying Mack's grievances arose in 1988, while the CBA was still in effect. As a result, the presumption set out in Nolde Brothers should be, if anything, even stronger where the dispute actually arose before the CBA expired.
 
 
 41
 Second, it is not obvious that the CBA's termination language covers grievance procedures that are ongoing when the agreement is terminated. It would be inconsistent with the policy favoring arbitration to summarily relieve the parties of the obligation to arbitrate where a dispute arose while the CBA was in effect and the resulting grievance procedure was initiated and well under way before either the CBA expired or the Union lost its representative status. See General Drivers, Warehousemen and Helpers, Local No. 89 v. Moog Louisville Warehouse, 852 F.2d 871, 874 (6th Cir.1988) (doubts as to whether a dispute is covered by arbitration clause should be resolved in favor of coverage).
 
 IV.
 
 42
 Among other issues, the district court left Malone & Hyde's claims of equitable and legal estoppel for resolution by the arbitrator in the event that the Union processed the arbitration. Malone & Hyde contends that the district court should have addressed these defenses. The Union argues that Malone & Hyde's estoppel defenses are "procedural" questions to be addressed at arbitration.
 
 
 43
 Malone & Hyde contends that the Union is estopped from seeking to require Malone & Hyde to arbitrate with the Union on the basis of positions taken by the Union in the present case and in Mack's separate N.L.R.B. action against the Union. The Employer claims that, in Mack's suit against the Union, the Union took the position that it had surrendered responsibility for processing Mack's claim to Mack and his attorney. Additionally, the Employer contends that, up to and including the trial in the instant case, the Union continued to request that the district court compel Malone & Hyde to arbitrate directly with Mack and his attorney.
 
 
 44
 The Supreme Court has found that, once it has been determined that the subject matter of a dispute is properly arbitrable, " 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons, 376 U.S. at 557, 84 S.Ct. at 918. Here, the underlying dispute involves Mack's discharge and clearly presents an arbitrable issue. Therefore, Malone & Hyde's estoppel claims, which concern both procedural prerequisites to arbitration and substantive provisions of the CBA, are properly left to arbitration. See International Union of Operating Engineers, Local 150 v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); John Wiley & Sons, 376 U.S. at 556-57, 84 S.Ct. at 918 ("Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it.").
 
 
 45
 Malone & Hyde cites to our decision in Amalgamated Clothing Workers, 386 F.2d at 592, where this court determined that a claim of laches was a proper subject for court consideration. In so holding, we specifically found that "a decision on laches adds or subtracts nothing from the meaning of the agreement. Furthermore, consideration of the issue [of laches] in no way involves a consideration of the merits of the underlying substantive issue." Id. However, unlike the laches claim in Amalgamated Clothing Workers, 386 F.2d at 591-92, Malone & Hyde's estoppel defenses "grow out of the dispute and bear on its final disposition," id. at 591, and are, therefore, arbitrable.
 
 
 46
 The judgment of the district court dismissing the Union's complaint is AFFIRMED.
 
 
 47
 CHURCHILL, Senior District Judge, concurring in part and dissenting in part.
 
 
 48
 I concur in the majority opinion except in one major respect. It is my opinion that on the facts of this case, the issue of whether arbitration is barred by release, abandonment, withdrawal, waiver or estoppel is for the court and not the arbitrator to resolve.
 
 
 49
 The arbitration clause of the collective bargaining agreement in this case is significantly narrower than the arbitration clause at issue in Amalgamated Clothing Workers v. Ironall Factories Co., 386 F.2d 586 (6th Cir.1967). Article XIII of the CBA does provide that "any discharge, suspension, or dispute or controversy of any kind over the application of this Agreement" shall be subject to the grievance process including arbitration. However, the final sentence in Article XIII delimits the scope of the arbitrator's powers: "the Committee of Arbitration is bound to decide the case upon the express language of this Agreement and shall not add to or alter the Agreement by interpretation." Article XIII; p 24 (emphasis added).
 
 
 50
 The issue of whether the conduct of Mack, his attorney, or the union has caused him to lose his right to have his grievance determined by arbitration cannot be determined by reference to the CBA. Furthermore, except with respect to the issue of time bar, the issue cannot be classified as a procedural issue. Procedural issues are defined as those which "involve claims by one of the parties that the other party has failed to follow the procedural conditions specified in the collective bargaining agreement." Amalgamated, 386 F.2d at 591 (emphasis added).
 
 
 51
 In my opinion questions, other than time bar, which the district court ruled were determinable by the arbitrator cannot be resolved by reference to the CBA and therefore are not arbitrable. I would remand the case to the district court for resolution of these issues.
 
 
 
 *
 Judge Churchill would grant rehearing for the reasons stated in his dissent
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Neither party challenges the decision of the district court leaving the question of whether the arbitration is time-barred to be determined by the arbitrator
 
 
 [2]
 In light of the reasoning in Amalgamated Clothing Workers, 386 F.2d at 590, it is unnecessary to classify this question as either "procedural" or "substantive."
 
 
 [3]
 In support of its position, Malone & Hyde refers to two Second Circuit decisions, Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers, Local One, 903 F.2d 924 (2d Cir.1990) and Rochdale Village, Inc. v. Public Service Employees Union, Local 80, 605 F.2d 1290 (2d Cir.1979), where the court held that agreements collateral to collective bargaining agreements were properly examined by the district court, not the arbitrator. We find neither of these authorities persuasive
 In Peerless, 903 F.2d at 929, the court held that an agreement settling a single labor dispute constituted a collateral agreement not to arbitrate and that construction of that agreement was properly for a court. However, the Peerless court concluded that the arbitration clause in the existing CBA did not cover the employee's grievance, id.; therefore, the only existing basis for arbitration was an oral agreement to arbitrate the particular claims of that one employee. The Peerless court specifically relied on the narrow scope of the arbitration agreement: "where an agreement [to arbitrate] is narrow, a court has greater leeway in determining whether the parties ended an agreement to arbitrate." Id. at 929. Here, in contrast, it is uncontested that the arbitration clause covers the subject matter of Mack's grievances.
 Rochdale, 605 F.2d at 1296, involved the question of whether the parties to a collective bargaining agreement terminated the agreement. Addressing the question of whether the parties to a collective bargaining agreement had entered into a side agreement terminating the CBA and the precise terms of such a side agreement, the court held that such matters were beyond the scope of the particular arbitration clause involved and, therefore, properly evaluated by the court. Id. at 1297. The release signed by Mack does not concern termination of the entire agreement. Mack's release only concerns arbitration of Mack's grievances and is not collateral to the CBA because it relates directly to the CBA's arbitration and grievance provisions.
 
 
 [4]
 Similarly, Litton Financial Printing, 501 U.S. at ----, 111 S.Ct. at 2218, involved a dispute that occurred after expiration of the collective bargaining agreement